WAL–MART STORES,
INCORPORATED,
Appellant,

v.

Doris FORTE, O.D., on behalf of Herself and all other Similarly Situated Persons; Bridget Leesang, O.D.; David Wiggins, O.D.; and John Boldan, O.D., Appellees

NO. 15–0146

Supreme Court of Texas.

Argued September 23, 2015

Opinion delivered: May 20, 2016

Rehearing Denied September 23, 2016

Ben A. Donnell, Donnell, Abernethy & Kieschnick, Corpus Christi TX, James C.

Ho, Gibson Dunn & Crutcher LLP, Dallas TX, Jim E. Cowles, Sim Israeloff, R. Michael Northrup, Cowles & Thompson, P.C., Dallas TX, Prerak Shah, Assistant Solicitor General, Office of the Attorney General of Texas, Austin TX, for Appellant.

Hector Antonio Canales, J. A. (Tony) Canales, Canales & Simonson, Corpus Christi TX, Jack N. Boyd Jr., Attorney at Law, Texarkana TX, Mark Clyde Burgess, Boyd Poff & Burgess LLP, Texarkana TX, Russell S. Post, Beck Redden LLP, Houston TX, William Robert Peterson, Morgan, Lewis & Bockius, LLP, Houston TX, James Patrick Bell, Law Offices of James P. Bell, Corpus Christi TX, for Appellees.

Reagan W. Simpson, Yetter Coleman LLP, Houston TX, Bill Davis, Charles E. Roy, First Assistant Attorney General, J. Campbell Barker, Scott A. Keller, Warren Kenneth Paxton Jr., Office of the Attorney General of Texas, Austin TX, Hugh Rice Kelly, Texans for Lawsuit Reform, Houston TX, Debra Baker, David George, Earnest W. Wotring, John Muir, Baker Wotring LLP, Houston TX, Dale Wainwright, Bracewell LLP, Austin TX, Jennifer Richards, Bracewell Giuliani LLP, Dallas TX, for Amicus Curiae parties.

CHIEF JUSTICE HECHT delivered the opinion of the Court, in which JUSTICE GREEN, JUSTICE JOHNSON, JUSTICE GUZMAN, and JUSTICE BROWN joined.

The State of Texas as amicus curiae argues that the certified questions now before us from the United States Court of Appeals for the Fifth Circuit are premised on an incorrect understanding of Texas law. Our dilemma is whether to address the premise of the questions when the parties have not done so, or answer questions that are hypothetical if the State is right. We choose the latter course.

The Texas Optometry Act[1] prohibits commercial retailers of ophthalmic goods from attempting to control the practice of optometry.[2] Section 351.603(b) of the Act authorizes the Texas Optometry Board, which administers the Act,[3] and the Attorney General to sue a violator for "a civil penalty not to exceed $1,000 for each day of a violation".[4] Section 351.605 provides that "[a] person injured as a result of a violation . . . is entitled to the remedies in . . . Section 351.603(b)".[5] The Fifth Circuit asks[6] whether such civil penalties, when sought by a private person, are exemplary damages limited by Chapter 41 of the Texas Civil Practice and Remedies Code.[7]

---

1. TEX. OCC. CODE §§ 351.001–.608. The predecessor to the current Act was passed in 1969, codified as article 4552 of the Texas Revised Civil Statutes, and recodified as Chapter 351 of the Occupations Code in 1999. Act of May 21, 1969, 61st Leg., R.S., ch. 401, 1969 Tex. Gen. Laws 1298 (amended 1981, 1991, and 1999) (formerly codified at TEX. REV. CIV. STAT. ANN. arts. 4552–1.01 to 4552–6.04), *repealed and recodified,* Act of May 13, 1999, 76th Leg., ch. 388, §§ 1, 6, 1999 Tex. Gen. Laws 1431, 1720, 2440. The provisions now found in Sections 351.408, 351.603(b), and 351.605 were added in 1981 and have been in effect, substantially unchanged, at all times material to this case. Act of June 1, 1981, 67th Leg., R.S., ch. 758, § 2, 1981 Tex. Gen. Laws 2798,

2807 (formerly codified at TEX. REV. CIV. STAT. ANN. art. 4552–5.11).

2. TEX. OCC. CODE § 351.408 (formerly codified as TEX. REV. CIV. STAT. ANN. art. 4452–5.11(a), (b), (c)).

3. *Id.* §§ 351.051–.163 (describing the board, its membership, powers, and duties).

4. *Id.* § 351.603(b).

5. *Id.* § 351.605.

6. *Forte v. Wal–Mart Stores, Inc.,* 780 F.3d 272, 283 (5th Cir.2015).

7. TEX. CIV. PRAC. & REM. CODE §§ 41.001–.014.

While the certified questions assume, perhaps incorrectly, that the Act authorizes recovery of civil penalties by a private person, rather than only by the Board or the Attorney General, we nevertheless answer in the affirmative.

In 1992, Wal–Mart Stores, Inc. ("Wal–Mart") began operating "Vision Centers" in its Texas retail stores, selling a variety of ophthalmic goods, such as spectacle lenses, frames, and contact lenses. Wal–Mart leased office space near the Vision Centers to optometrists. A typical lease required the optometrist to keep the office open at least 45 hours per week or pay $200 per day in liquidated damages.

The Act provides that "[a] manufacturer, wholesaler, or retailer of ophthalmic goods may not directly or indirectly ... control or attempt to control the professional judgment, manner of practice, or practice of an optometrist".[8] This specifically includes "setting or attempting to influence the ... office hours of an optometrist".[9] The Attorney General and the Board may enforce this prohibition by a suit for in-

junctive relief, a civil penalty not to exceed $1,000 per day, and attorney fees.[10] A person injured by a violation "is entitled to" the same relief[11] as well as damages.[12] A violation is also actionable under the Texas Deceptive Trade Practices–Consumer Protection Act[13] and is a misdemeanor punishable, for each day of violation, by a fine from $100 to $1,000, confinement in the county jail from two to six months, or both.[14] Suffice it to say that the Act is serious about preventing control of optometrists.

In 1995, the Board advised Wal–Mart that its minimum office-hour requirement violated the Act. Wal–Mart dropped the requirement and changed its lease form, allowing an optometrist lessee to insert daily hours of operation and providing that it would "retain no control whatsoever over the manner and means by which the [optometrist] performs his/her work." In the Board's view, these changes were not sufficient to comply with the Act. In 1998, the Board published a newsletter in which it opined that any commercial lease merely referencing an optometrist's hours violated

8. Tex. Occ. Code § 351.408(c)(1).

9. Id. § 351.408(b)(1).

10. Id. § 351.603(b) ("The attorney general or board may institute an action against a manufacturer, wholesaler, or retailer of ophthalmic goods in a district court in the county in which a violation of Section 351.408 is alleged to have occurred for injunctive relief and a civil penalty not to exceed $1,000 for each day of a violation plus court costs and reasonable attorney's fees.").

11. Id. § 351.605 ("A person injured as a result of a violation of Section 351.408, including an optometrist who is a lessee of a manufacturer, wholesaler, or retailer, is entitled to the remedies in Sections 351.602(c)(2), 351.603(b), and 351.604(3).").

12. Id. § 351.602(c)(2) ("A person may institute an action in a district court in the county

in which the violation is alleged to have occurred for injunctive relief or damages plus court costs and reasonable attorney's fees if the person is injured by another person who violates: (1) Section 351.403; or (2) Section 351.408.").

13. Id. § 351.604(3) ("A violation of any of the following sections is actionable under Subchapter E, Chapter 17, Business & Commerce Code: ... (3) Section 351.408 .... "); see Tex. Bus. & Com. Code §§ 17.41–.63.

14. Tex. Occ. Code § 351.606("(a) A person commits an offense if the person violates this chapter. (b) An offense under Subsection (a) is a misdemeanor punishable by: (1) a fine of not less than $100 or more than $1,000; (2) confinement in county jail for a term of not less than two months or more than six months; or (3) both the fine and confinement. (c) A separate offense is committed each day a violation of this chapter occurs or continues.").

the Act. And in 2003, the Board notified Wal–Mart that it was violating the Act simply by informing optometrists that customers were requesting longer business hours.

In 2007, four Texas optometrists—Doris Forte, Bridget Leesang, David Wiggins, and John Boldan ("the Optometrists")—all with post–1995 Wal–Mart leases, sued Wal–Mart in federal district court.[15] The Optometrists offered evidence that during lease negotiations, Wal–Mart had instructed them what hours they should include in the lease to obtain approval;[16] that they believed those hours were enforceable; and that they were pressured to work longer hours. But the Optometrists also testified that the hours they included in their leases were appropriate and acceptable to them. Wal–Mart presented evidence that the office hours stated in leases were not enforced, could be changed by the Optometrists at any time, and allowed Wal–Mart to inform customers when optometrists would be available. There was no evidence that including office hours in the leases injured customers.

The district court instructed the jury that the Optometrists "do not claim that they have suffered any physical or economic damages [and] only seek to recover civil penalties." The jury awarded the Optometrists $3,953,000 in civil penalties— $1,000 for every day the Optometrists had operated under the leases, the maximum

penalty allowed by the Act. The jury also awarded the Optometrists $763,854 in attorney fees. Post-verdict, the court ordered a remittitur, which the Optometrists accepted, reducing the civil penalty to $400 per day, totaling $1,396,400.

On appeal, Wal–Mart contended that its conduct did not violate the Act. The Fifth Circuit rejected this argument.[17] Wal–Mart also argued that the Optometrists' suit was for "damages" within the meaning of Chapter 41 of the Civil Practice and Remedies Code,[18] that the penalties awarded the Optometrists were exemplary damages as defined by that statute,[19] and therefore that the penalties could not be awarded absent a recovery of "damages other than nominal damages".[20] The Fifth Circuit agreed at first,[21] but on rehearing noted that we had not decided the issue,[22] and certified the following two questions to this Court:

1. Whether an action for a "civil penalty" under the Texas Optometry Act is an "action in which a claimant seeks damages relating to a cause of action" within the meaning of Chapter 41 of the Texas Civil Practice and Remedies Code. In other words, are civil penalties awarded under Tex. Occ.Code § 351.605 "damages" as that term is used in Tex. Civ. Prac. & Rem.Code § 41.002(a).

2. If civil penalties awarded under the Texas Optometry Act are "damages" as that term is used in Tex. Civ. Prac. &

---

15. The suit was filed on behalf of about 400 similarly situated optometrists, but the court refused to certify a class and required that four test-case plaintiffs be designated.

16. While the suit was pending, Wal–Mart deleted the requirement that office hours be stated in its leases and notified all leasing optometrists that it would not enforce any provision related to operating hours.

17. *Forte v. Wal–Mart Stores, Inc.*, 763 F.3d 421, 425–428 (5th Cir.2014), *vacated,* 780 F.3d 272 (5th Cir.2015).

18. Tex. Civ. Prac. & Rem. Code § 41.002(a).

19. *Id.* § 41.001(5).

20. *Id.* § 41.004(a).

21. *Forte,* 763 F.3d at 425–428.

22. *Forte,* 780 F.3d at 281.

Rem.Code § 41.002(a), whether they are "exemplary damages" such that Tex. Civ. Prac. & Rem.Code § 41.004(a) precludes their recovery in any case where a plaintiff does not receive damages other than nominal damages.[23]

As usual, the Circuit added: "We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the questions certified."[24]

We accepted the certification.[25]

The State of Texas as amicus curiae argues that Section 351.605 of the Act does not authorize a private suit for penalties. The "remedies" in Section 351.603(b) to which an injured person "is entitled to" under Section 351.605 are not civil penalties, the State contends, but actions for civil penalties brought by the Attorney General or the Board. The State points to *Brown v. De La Cruz*, where we said that "a statute providing for a daily penalty unrelated to actual losses must be strictly construed, and may be asserted in a private cause of action only if the statute clearly so provides."[26] Section 351.605, the State asserts, does not meet this high standard. The State advises that it is aware of no other Texas statute that allows a private suit for penalties using the "entitled to the remedies" cross-reference formulation of Section 351.605. The parties have not tackled the State's argument in substance. Wal–Mart merely calls it "interesting" and the Optometrists bluntly dismiss it as wrong.

The State's argument has force. If it is right, we need not consider the effect of Chapter 41 on the recovery of penalties, the subject of the certified questions. We might consider the Fifth Circuit's disclaimer of precise limitation on the scope of the questions to allow us to reach the State's argument, but the parties have not chosen to engage on this issue, and we are reluctant to do so without the benefit of their arguments. We are also reluctant to direct them to argue an issue they have elected not to raise. We might decline to answer the certified questions at all, but that would deprive the Fifth Circuit of the guidance it has sought and perversely suggest an end result contrary to the one we would reach. We faced a similar predicament in *Diamond Shamrock Refining and Marketing Co. v. Mendez*, where Diamond Shamrock argued that malice should be an element of false light invasion of privacy, a tort we had never recognized, but did not argue that the tort itself should not exist.[27] We determined that the best course was to assume the availability of the cause of action and address the issue raised.[28] We follow that course here.

Chapter 41 "applies to any action in which a claimant seeks damages relating to a cause of action",[29] with four specified exceptions, to which we will return.[30] In

23. *Id.* at 283.

24. *Id.*

25. 58 Tex.Sup.Ct.J. 427 (March 6, 2015). The Fifth Circuit held that Wal–Mart violated the Act. *Forte*, 780 F.3d at 277–278. The Chamber of Commerce of the United States and Texas Association of Business argue as amici curiae that this holding was incorrect. We express no view on that issue.

26. 156 S.W.3d 560, 565 (Tex.2004).

27. 844 S.W.2d 198, 200 (Tex.1992).

28. *Id.* (deciding the "actual malice" issue in reversing and remanding the cause for a new trial).

29. Tex. Civ. Prac. & Rem. Code § 41.002(a).

30. *Id.* § 41.002(d). The exceptions are for actions under Section 15.21 of the Texas Business and Commerce Code (Texas Free Enterprise and Antitrust Act of 1983), Chapter 17 of the Texas Business and Commerce Code

the actions to which it applies, it "establishes the maximum damages that may be awarded".[31] Chapter 41 does not define "damages" but uses the term broadly to include compensatory, economic, noneconomic, future, and exemplary damages, all of which are defined.[32] Exemplary damages are defined as follows:

"Exemplary damages" means any damages awarded as a penalty or by way of punishment but not for compensatory purposes. Exemplary damages are neither economic nor noneconomic damages. "Exemplary damages" includes punitive damages.[33]

Thus, Chapter 41 applies to "any action" in which exemplary damages are sought. Indeed, most of Chapter 41 governs and limits the recovery of exemplary damages.

Chapter 41 does not refer to civil penalties. To determine whether they are damages, when neither is defined in the statute, we could look to the ordinary meanings of the words. Here, that is of little help. The Optometrists cite the definition of "damages" in the fifth edition of *Black's Law Dictionary* as "[a] pecuniary

compensation or indemnity" or "a compensation in money for a loss or damage"[34] and argue that damages must be compensatory.[35] But Chapter 41 defines noncompensatory, exemplary damages as "damages".[36] Wal–Mart, on the other hand, points to the definition of "civil penalties" in the sixth edition of *Black's Law Dictionary* as "punishment for specific activities ... usually in the form of fines or money damages." While these references certainly suggest that Chapter 41 damages *could* include civil penalties, they offer little guidance on whether such damages *do* include civil penalties.

We could also look to our own cases or other authorities. We have noted that civil penalties are different from compensatory damages[37] and even that not all compensatory recovery can be considered damages.[38] These observations do not determine the proper interpretation of Chapter 41. Wal–Mart and the Optometrists cite a number of cases that either equate or differentiate civil penalties and damages in various contexts.[39] Our inquiry is more specific.

(Deceptive Trade Practices–Consumer Protection Act), Chapter 36 of the Texas Human Resources Code (Medicaid fraud), and Title 13 of the Insurance Code. There are other exceptions to the applicability of Chapter 41 and its provisions; e.g., this chapter does not apply "to the extent another law establishes a lower maximum amount of damages for a particular claim", *id.* § 41.002(b), and its cap does not apply when exemplary damages are sought based on certain criminal conduct, *id.* § 41.008(b), (c), (d), (f).

**31.** *Id.* § 41.002(b).

**32.** *Id.* § 41.001(4), (5), (8), (9), (12).

**33.** *Id.* § 41.001(5).

**34.** BLACK'S LAW DICTIONARY 351 (5th ed.1979).

**35.** *See Geters v. Eagle Ins. Co.,* 834 S.W.2d 49, 50 (Tex.1992) (per curiam) ("Damages" are

" 'compensation in money imposed by law for loss or injury.' ").

**36.** BLACK'S LAW DICTIONARY 246 (6th ed.1990).

**37.** *See Agey v. Am. Liberty Pipe Line Co.,* 141 Tex. 379, 172 S.W.2d 972, 974 (1943) (noting in passing that a claimant seeking statutory civil penalties "did not sue for damages").

**38.** *In re Longview Energy Co.,* 464 S.W.3d 353, 361 (Tex.2015) ("Disgorgement is compensatory in the same sense attorney fees, interest, and costs are, but it is not damages."); *In re Nalle Plastics Family Ltd. P'ship,* 406 S.W.3d 168, 173 (Tex.2013) ("Not every amount, even if compensatory, can be considered damages.").

**39.** Wal–Mart cites a variety of federal cases that equate civil penalties and damages. *See, e.g., United States v. Ford Motor Co.,* 497 F.3d

In interpreting a statute, we may also consider the "object sought to be obtained" and the "circumstances under which the statute was enacted".[40] Unquestionably, Chapter 41 was enacted to restrict and structure the recovery of exemplary damages. Among other things, it requires: proof by clear and convincing evidence of the elements for exemplary damages; proof that the defendant acted with certain prerequisite culpable mental states;[41] consideration of evidence on certain prescribed factors;[42] specific jury questions and instructions;[43] a bifurcated trial;[44] a unanimous verdict;[45] and careful judicial review.[46] Chapter 41 limits the amount of exemplary damages relative to compensatory damages,[47] and, more importantly for our purposes here, precludes an award of exemplary damages unless other damages, besides nominal damages, are awarded.[48] And as noted above, Chapter 41 excepts actions only under four specified statutes.[49] The Texas Optometry Act is not one of those statutes.

Given the breadth of Chapter 41, we cannot read in exceptions that would impair its purpose. The Optometrists argue civil penalties under the Act need not be governed by Chapter 41 because they are already limited to at most $1,000 per day.[50] The jury in this case awarded the Optometrists the maximum penalties under the Act. The district court reduced the award by 60%. Why? Because the court thought it was too much. But what is too much, when neither the Optometrists nor their customers suffered injury against which to measure an appropriate sanction? It is this possibility of a wide, standardless range of permissible penalties that makes civil penalties much like exemplary damages when they were limited only by constitutional and common-law principles. This uncertainty, verging on arbitrariness, is precisely what Chapter 41 addresses.

The Optometrists argue that the Act provides for recovery of both damages[51] and civil penalties,[52] suggesting that the two are different. But the issue is not whether they are different. The issue is whether Chapter 41 applies to both. The Optometrists argue that applying Chapter

1331, 1338 (Fed.Cir.2007) (civil penalties are a "type[] of money damages"); *United States v. TDC Mgmt. Corp.*, 288 F.3d 421, 427 (D.C.Cir.2002) ("the government recovered as damages a civil penalty"). The Optometrists cite the opposite: a variety of state and federal cases that distinguish civil penalties and damages. *See, e.g., Mem'l Hermann Hosp. Sys. v. Progressive Cty. Mut. Ins. Co.*, 355 S.W.3d 123, 127 (Tex.App.–Houston [1st Dist.] 2011, pet. denied) ("Section 11.004 also makes the county clerk liable for damages and civil penalties if it violates the specified recordation requirements."); *United States ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390, 395 (4th Cir.2013) ("Bunk possessed standing to sue for civil penalties while bypassing the prospect of a damages award").

**40.** TEX. GOV'T CODE § 311.023(1)–(2).

**41.** TEX. CIV. PRAC. & REM. CODE §§ 41.003(a)–(c), 41.005(b), 41.008(c)–(d).

**42.** *Id.* § 41.011(a).

**43.** *Id.* §§ 41.003(d), 41.008(a), 41.012.

**44.** *Id.* § 41.009; *see also id.* § 41.011(b).

**45.** *Id.* § 41.003(d).

**46.** *Id.* § 41.013(a).

**47.** *Id.* § 41.008(b).

**48.** *Id.* § 41.004(a).

**49.** *Supra* note 30.

**50.** TEX. OCC. CODE § 351.603(b).

**51.** *Id.* § 351.602(c)(2).

**52.** *Id.* § 351.605.

41 deprives the Act of force. But the Act allows for a private suit for damages as well as enforcement by the Attorney General and the Board. The Optometrists argue that Chapter 41's exception "to the extent another law establishes a lower maximum amount of damages for a particular claim"[53] applies because civil penalties are capped at $1,000 per day. But there is no limit on the number of days that a violation can occur, and thus no limit on the amount of civil penalties that a claimant can receive for a single violation.

The Optometrists argue that if Chapter 41 applies to their recovery of sanctions, then it also applies to the Attorney General's or the Board's imposition of sanctions. But this argument is flawed for at least two reasons. First, the Attorney General and the Board could rarely, if ever, recover damages, so the application of Chapter 41 would destroy their enforcement powers under the Act. And second, the imposition of sanctions by the government is limited by institutional constraints not present when the claimant is a private person.

The Optometrists argue that if Chapter 41 applies to civil penalties under the Act, it must apply to all civil penalties under all statutes. They identify 24 Texas statutes allowing for both damages and civil penalties, and seven others allowing for civil penalties without mentioning damages. But whether Chapter 41 applies to any of these other statutes depends on the analysis we have followed here, not simply on a statutory authorization of civil penalties.

■ The Optometrists concede that Chapter 41 damages include compensatory damages, statutory multiple damages, and statutory additional damages. The only private monetary recovery excluded in their view is civil penalties. We cannot find justification in the statute for this exception. We conclude that a private recovery of civil penalties under the Act is subject to Chapter 41.

■ The Optometrists concede that if Chapter 41 damages include private civil penalties under the Act, it is difficult to argue that they are not "exemplary damages"—"damages awarded as a penalty or by way of punishment but not for compensatory purposes."[54] We agree. Having determined that Chapter 41 applies, we easily conclude that civil penalties are exemplary damages for purposes of Section 41.004(a). The answer to the second certified question is yes. Because the Optometrists recovered no other damages, Chapter 41 bars recovery of the civil penalties as exemplary damages.

* * * * *

With the reservations we have noted regarding the premise underlying the certified questions, we answer both yes.

JUSTICE BOYD filed a dissenting opinion, in Part I of which JUSTICE LEHRMANN and JUSTICE DEVINE joined.

JUSTICE WILLETT did not participate in the decision.

JUSTICE BOYD, joined in Part I by JUSTICE LEHRMANN and JUSTICE DEVINE, dissenting.

I would not answer the certified questions in this case because they are based on the premise that the Texas Optometry Act authorizes private persons to sue for civil penalties. The State, as *amicus curiae*, argues that the Act does not create a private right of action for civil penalties,

---

**53.** TEX. CIV. PRAC. & REM. CODE § 41.002(b).

**54.** *Id.* § 41.001(5).

and although the parties have not briefed the issue, it seems to me that the State is correct. Although the Court appears to share my doubts about the questions' premise, it chooses to assume the premise is correct, answers the questions as if it were, and concludes that "civil penalties" are "damages" and "exemplary damages" under Chapter 41 of the Texas Civil Practice & Remedies Code.

I disagree with the Court's decision to answer the questions as if their premise were correct. If the premise is incorrect, as it appears to be, answering the questions without first addressing the premise will only cause confusion and a waste of judicial and other resources. I would ask the parties to brief the premise and decide that issue first. At a minimum, I would advise the Fifth Circuit and the parties of our concerns about the premise and decline to answer the questions. I also disagree with the Court's answers to the certified questions, which seem to result more from the assumption that the premise is correct than from the relevant statutory language. Based on the statutory language, I conclude that civil penalties awarded under the Optometry Act are not "damages" or "exemplary damages" under Chapter 41. I write briefly to explain both reasons for my dissent.

## I.

### The Questions

The Optometry Act makes it unlawful for a manufacturer, wholesaler, or retailer of ophthalmic goods to "directly or indirectly ... control or attempt to control the professional judgment, manner of practice, or practice of an optometrist." Tex. Occ. Code § 351.408(c)(1). "A person injured as a result of a violation" of that prohibition "is entitled to the remedies in Sections 351.602(c)(2), 351.603(b), and 351.604(3)." *Id.* § 351.605. The three remedies are:

- "A person may institute an action in a district court ... for injunctive relief or damages plus court costs and reasonable attorney's fees," *id.* § 351.602(c);

- "The attorney general or [Texas Optometry Board] may institute an action ... for injunctive relief and a civil penalty not to exceed $1,000 for each day of a violation plus court costs and reasonable attorney's fees;" *id.* § 351.603(b); and

- "A violation ... is actionable under" the Texas Deceptive Trade Practices–Consumer Protection Act, *id.* § 351.604.

In this case, the Optometrists successfully sued Wal–Mart for civil penalties under section 351.603(b) and did not seek any actual damages. On appeal, Wal–Mart argues that the civil penalties are "exemplary damages" under Chapter 41 of the Civil Practice and Remedies Code, and the Optometrists cannot recover them because "exemplary damages may be awarded only if damages other than nominal damages are awarded." Tex. Civ. Prac. & Rem. Code § 41.004(a). In two certified questions, the United States Court of Appeals for the Fifth Circuit asks us whether civil penalties awarded under the Optometry Act are "damages" under Chapter 41, and if so, whether they are " 'exemplary damages' such that [section] 41.004(a) precludes their recovery in any case where a plaintiff does not receive damages other than nominal damages." *Forte v. Wal–Mart Stores, Inc.,* 780 F.3d 272, 283 (5th Cir.2015). As usual, the Fifth Circuit "disclaim[s] any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the questions certified." *Id.*

This Court has constitutional authority to answer "questions of state law certified

from a federal appellate court." TEX. CONST. art. V, § 3–c(a); *see* TEX. R. APP. P. 58.1. When a federal circuit court certifies questions to us, "the questions certified do not limit our answers," but we aim to "provide answers solely as to the status of Texas law on the questions asked." *Interstate Contracting Corp. v. City of Dallas*, 135 S.W.3d 605, 620 (Tex.2004). "Any response other than that necessary to answer the question authorized by the Constitution or the enabling rules would be dicta." *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 844 (Tex.1990). We may, however, "decline to answer the questions." TEX. R. APP. P. 58.1. In this case, I would decline to answer the questions because they appear to be based on a faulty premise.

The premise is that the Optometrists can sue for civil penalties under the Optometry Act. Although the parties have not briefed that issue, the Act's plain language and our precedents indicate that the premise is incorrect. "Generally, a statutory penalty or fine is not payable to a private litigant." *Brown v. De La Cruz*, 156 S.W.3d 560, 564 (Tex.2004). Some statutes expressly state that a private individual may file suit to recover a civil penalty. *See, e.g.*, TEX. GOV'T CODE § 82.0651(b)(4) (providing that a client who prevails in a barratry action shall recover from the attorney "a penalty in the amount of $10,000"); TEX. PROP. CODE §§ 92.0081(h) (providing that a "tenant may . . . recover from the landlord a civil penalty of one month's rent plus $1,000"), 92.334(b) ("[A] landlord . . . may recover from [a] tenant a civil penalty of one month's rent plus $500."). All of those statutes that I could find, however, provide for a one-time penalty rather than a per-day or per-violation penalty, like the Optometry Act. *Compare* TEX. OCC. CODE § 1801.154(a)(2) ("A [violator] is subject to a penalty of not less than $100 or more than $500."), *with id.* § 351.603(b) ("The attorney general or

board may institute an action . . . for . . . a civil penalty not to exceed $1,000 for *each day* of a violation . . . ." (emphasis added)). Any "statute providing for a daily penalty unrelated to actual losses must be strictly construed, and may be asserted in a private cause of action only if the statute clearly so provides." *Brown*, 156 S.W.3d at 565.

When a statute that provides for a civil penalty is silent as to who may file suit to recover it, we have "strictly construed" the statute to permit a claim only by "the Attorney General or some other governmental entity or representative." *Id.* at 563–65 (holding statute that provided that a "seller who violates Subsection (a) *is subject to a penalty*" did not create a private cause of action). Even when a statute provided that one-half of a penalty "may be recovered by and for the use of any person" aggrieved by the violation, we concluded that only the government could sue for the penalty because the statute did not expressly state that the aggrieved person could bring the claim. *Agey v. Am. Liberty Pipe Line Co.*, 141 Tex. 379, 172 S.W.2d 972, 974 (1943).

The Optometry Act is not silent as to who may sue for civil penalties; it expressly provides that the "attorney general or board may institute an action . . . for . . . a civil penalty." TEX. OCC. CODE § 351.603(b). Although the Act provides that a "person injured as a result of a violation . . . is entitled to" that remedy, *id.* § 351.605, the remedy that section 351.603(b) provides is a suit by the attorney general or the Optometry Board, not a private cause of action by the injured person. By contrast, the Act expressly provides that an injured person "may institute an action . . . for injunctive relief or damages," *id.* § 351.602(c), and that a violation "is actionable under" the DTPA, *id.* § 351.604, which expressly allows a "con-

sumer [to] maintain an action," TEX. BUS. & COM. CODE § 17.50(a), and defines a consumer as "an individual." *Id.* § 17.45(3). But the Act does not "clearly provide" that a private person may sue for a civil penalty. It thus appears that the certified questions' premise is wrong.

When this Court receives a certified question that is based on a faulty premise, we routinely decline to answer the question. *See, e.g., Doody v. Ameriquest Mortg. Co.,* 49 S.W.3d 342, 343 (Tex.2001) (declining to answer second certified question because the Court's answer to first question negated the basis for the second); *Lucas v. United States,* 757 S.W.2d 687, 687 (Tex.1988) (declining to answer second question because answer to first question made answering second question "unnecessary"). Even here, the Fifth Circuit's second question (whether civil penalties are exemplary damages) is conditioned on a "yes" answer to the first question (whether civil penalties are damages), and if we were to answer the first certified question "no," we would not answer the second. Although the Fifth Circuit does not ask the threshold question on which its two questions depend (whether the Optometrists can sue for civil penalties), the principle is the same. If the certified questions are based on a faulty premise, answering them is "unnecessary" and the Court should respectfully decline the Fifth Circuit's request.

The Court elects to assume the premise is correct and answer the questions, following the course the Court took when it faced a "similar predicament" in *Shamrock Refining and Marketing Co. v. Mendez,* 844 S.W.2d 198 (Tex.1992). *Ante* at 464. In that case, the plaintiff prevailed on a claim for " 'false light' invasion of privacy," and the court of appeals affirmed. *Shamrock Ref.,* 844 S.W.2d at 198. In this Court, the defendant argued that the trial court erred by failing to instruct the jury that the claim required proof that the defendant acted with malice. *Id.* at 199. This Court had never recognized the false-light cause of action in Texas, however, and several non-parties filed *amicus curiae* briefs urging us to reject the claim. *Id.* at 200 & n. 1. We chose instead to "assum[e] the availability of this cause of action," and held that, if it exists, it requires proof of malice. *Id.* at 200. Because the Court had "not yet either recognized or disapproved the tort," we remanded the case "for a new trial in the interest of justice, giving [the plaintiff] an opportunity to prove actual malice and [the defendant] an opportunity to object to the theory of recovery in its entirety." *Id.*

A mere twenty months later, however, the Court "join[ed] those jurisdictions that do not recognize the false light invasion of privacy action." *Cain v. Hearst Corp.,* 878 S.W.2d 577, 579 (Tex.1994). In the short time that passed between *Shamrock Refining* and *Cain,* the courts and parties in those cases, along with those involved in at least eight other cases, continued to litigate and appeal false-light claims.[1] They no doubt expended significant time and resources in the process. All of that waste

---

1. *See Groves v. Gabriel,* 874 S.W.2d 660, 661 (Tex.1994); *City of Alamo v. Garcia,* 878 S.W.2d 664, 665 (Tex.App.–Corpus Christi 1994, no writ); *Shaheen v. Motion Indus., Inc.,* 880 S.W.2d 88, 93 (Tex.App.–Corpus Christi 1994, writ denied); *Closs v. Goose Creek Consol. Indep. Sch. Dist.,* 874 S.W.2d 859, 878 (Tex.App.–Texarkana 1994, no writ); *Maewal v. Adventist Health Sys./Sunbelt, Inc.,* 868 S.W.2d 886, 888 (Tex.App.–Fort Worth 1993, writ denied); *Reeves v. W. Co. of N. Am.,* 867 S.W.2d 385, 396 (Tex.App.–San Antonio 1993, writ denied); *Mitre v. La Plaza Mall,* 857 S.W.2d 752, 755 (Tex.App.–Corpus Christi 1993, writ denied); *Schauer v. Mem'l Care Sys.,* 856 S.W.2d 437, 443 (Tex.App.–Houston [1st Dist.] 1993, no writ).

could have been avoided if the Court had solicited briefing and decided the issue in *Shamrock Refining*. I believe that would be the "best course" to take here.

The Court concludes that approach "would be difficult when the matter is outside the questions certified to us," *ante* at 464, but the Fifth Circuit expressly "disclaim[s] any intention or desire" that we "confine [our] reply to the precise ... scope of the questions certified." *Forte*, 780 F.3d at 283. I expect the Fifth Circuit and the parties would prefer to have an answer to the threshold question before they expend additional resources litigating and deciding questions that will likely prove to be irrelevant. At a minimum, I would explain our concerns about the premise and "decline to answer the [certified] questions," just as our rules permit. Tex. R. App. P. 58.1.

## II.

### The Answers

Because the Court elects to address the certified questions, I write briefly to explain my disagreement with its answers. The Court concludes that civil penalties awarded under ·the Optometry Act are "damages" and "exemplary damages" under Chapter 41. *Ante* at 467. As the Court notes, Chapter 41 expressly defines "economic damages," ·"exemplary damages," "compensatory damages," "future damages," and "noneconomic damages." Tex. Civ. Prac. & Rem. Code §§ 41.001(4), (5), (8), (9), (12). But it does not define "damages," and it "does not refer to civil penalties." *Ante* at 465.

In the absence of a statutory definition, we must seek to determine a term's plain or ordinary meaning. *Beeman v. Livingston*, 468 S.W.3d 534, 539 (Tex.2015). We may do that by relying on "a wide variety of sources, including dictionary definitions, treatises and commentaries, our own prior

constructions of the word in other contexts, the use and definitions of the word in other statutes and ordinances, and the use of the words in our rules of evidence and procedure." *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014) (plurality op.). But as the Court notes, these sources provide little, if any, guidance here. Because the term "damages" is so broad and used in so many different contexts, dictionary definitions are "of little help," *ante* at 465, and our prior discussions of the term "do not determine the proper interpretation of Chapter 41," *ante* at 465. I agree.

Finding no guidance in our usual sources, the Court bases its answers on Chapter 41's "object" and "purpose," which "[u]nquestionably" is "to restrict and structure the recovery of exemplary damages." *Ante* at 466. I agree that is what Chapter 41 does, but that does not answer the question of whether civil penalties are exemplary damages. To say that civil penalties are exemplary damages under Chapter 41 because Chapter. 41. restricts awards of exemplary damages simply begs the question.

Similarly, the Court notes that Chapter 41 expressly states that it does not apply to actions brought under four other statutes, and "[t]he Texas Optometry Act is not one of them." *Ante* at 466. The Court concludes it cannot read the Optometry Act in as an "exception" that would impair Chapter 41's purpose. *Ante* at 467. But if civil penalties are not exemplary damages, there is no need for any exception. The question here is not whether Chapter 41 applies to actions under the Optometry Act; the question is whether it restricts a recovery of "civil penalties" under the Optometry Act. The Act permits an action for civil penalties and separately permits an action for damages, but it does not permit a claim for "exemplary damages." If civil penalties are not exemplary

damages, then no exception is necessary at all. *Again*, the Court's reasoning simply begs the question.

Ultimately, I find the Optometrists' arguments convincing. First, in the absence of any guidance in the language of Chapter 41, I find guidance in the fact that the Optometry Act unambiguously treats "damages" and "civil penalties" as two distinct forms of relief. *Compare* TEX. OCC. CODE § 351.602(c) (permitting "[a] person" to recover "damages plus court costs and reasonable attorney's fees"), *with id.* § 351.603(b) (permitting the attorney general or board to sue for "a civil penalty"). And the Optometrists identify numerous other Texas statutes that allow recovery of both damages and civil penalties and, like the Optometry Act, treat them as two distinct remedies.[2]

The Court rejects this argument because "the issue is not whether [damages and civil penalties] are different" but "whether Chapter 41 applies to both." *Ante* at 466. But whether Chapter 41 applies to both depends on whether they are different. Chapter 41 addresses "damages" and "exemplary damages," but never mentions civil penalties. If they are the same, Chapter 41 applies to both. If they are different, Chapter 41 applies to a claim for damages but not to a claim for civil penalties. Chapter 41 is unclear, but the Optometry Act and numerous other statutes clearly treat them as different. I would conclude that Chapter 41 does not apply to civil penalties because nothing in that statute indicates or suggests that the term "damages" means something different from what it means in all of the statutes that clearly distinguish between damages and civil penalties.

Second, I find guidance in the fact that the Optometry Act permits only the "attor-

2. *See, e.g.,* TEX. GOV'T CODE § 82.0651(d) (permitting a barratry plaintiff to recover "actual damages" and "a penalty in the amount of $10,000"); TEX. OCC. CODE § 1801.154(a) (providing a commission merchant may be liable for "actual damages" and a "penalty of not less than $100 or more than $500"); TEX. PROP. CODE §§ 27.007 (providing contractor who fails to provide required notice may be liable for "a civil penalty of $500 in addition to" damages), 92.0081(h) (permitting a tenant to recover "a civil penalty of one month's rent plus $1,000" and "actual damages"), 92.0131(f) (permitting tenant to recover "a civil penalty in the amount of $100 plus any towing or storage costs"), 92.015(c) (permitting a tenant to recover "a civil penalty in an amount equal to one month's rent" and "actual damages"), 92.016(e) (permitting a tenant to recover "actual damages" and "a civil penalty equal in amount to the amount of one month's rent plus $500"), 92.0161(f) (same), 92.017(h) (permitting recovery of "actual damages" and "a civil penalty in an amount equal to the amount of one month's rent plus $500"), 92.0562(g)(5) (permitting a tenant to recover "a civil penalty of one month's rent plus $2,000" and "actual damages"), 92.0563(a) (permitting a tenant to recover "actual damages" and "a civil of one month's rent plus $500"), 92.164(a)(4) (permitting a tenant to recover "actual damages" and "a civil penalty of one month's rent plus $500"), 92.165(3) (same), 92.260 (permitting a tenant to recover "damages" and "a civil penalty of one month's rent plus $100"), 92.333 (permitting a tenant to recover "actual damages" and "a civil penalty of one month's rent plus $500"), 94.158(g)(5) (permitting tenant to recover "actual damages" and "a civil penalty of one month's rent plus $2,000"), 94.159(a) (permitting a tenant to recover "actual damages" and "a civil penalty of one month's rent plus $500"), 94.160(a) (permitting a landlord to recover "actual damages" and "a civil penalty of one month's rent plus $500"), 94.254 (permitting a tenant to recover "actual damages" and "a civil penalty of one month's rent plus $500"), 94.301 (permitting a tenant to recover "actual damages" and "a civil penalty in an amount equal to two months' rent and $500"); TEX. TRANSP. CODE §§ 5.004(b) (providing common carrier may be liable for "damages" and "a penalty of not less than $5 or more than $500"), 5.008(b) (same).

ney general or board" to sue for civil penalties. TEX. OCC. CODE § 351.603(b). If civil penalties are exemplary damages under Chapter 41, then, as the Court agrees, the attorney general and board "could rarely, if ever, recover" civil penalties because they would rarely, if ever, recover anything other than nominal damages. *Ante* at 467. The Court concludes this argument is "flawed" because "the application of Chapter 41 would destroy" the government's "enforcement powers under the Act" and "the imposition of sanction by the government is limited by institutional constraints not present when the claimant is a private person." *Ante* at 467. The Court thus appears to believe that Chapter 41 applies when a private party seeks a civil penalty (or "exemplary damages") but not when the government seeks a civil penalty (or "exemplary damages"). Nothing in the language of Chapter 41 supports that belief, and the Legislature easily could have excluded claims by the government if that had been its intent. Rather than rely on the absurdity doctrine or a canon of construction to rewrite Chapter 41 so that it does not apply to government enforcement actions, the more logical result is to conclude that, consistent with the Optometry Act and numerous other statutes, civil penalties are distinct from damages and exemplary damages under Chapter 41.

Finally, I find guidance in the Optometrists' argument that applying Chapter 41 to a claim for civil penalties under the Optometry Act would require applying it to all claims for civil penalties. The Court avoids this argument by reasoning that the question of "whether Chapter 41 applies to any of these other statutes depends on the analysis we have followed here." *Ante* at 467. But it fails to identify any explanation or example of how that analysis could produce a different result when applied to the other statutes that treat damages and civil penalties as distinct remedies. *See*

*supra* note 2 and accompanying text. The purpose of civil penalties is always the same, and the question in each application would simply be whether "civil penalties" are "damages" or "exemplary damages" under Chapter 41. The Court provides no reason why the answer would ever be different, and I can think of none.

All of this is not to suggest that the answers in this case are easy. If they were, the Fifth Circuit would have answered them without requesting our help. We must construe Chapter 41 as written, but at least for the questions presented here, it was not written very well. In the end, I would conclude that civil penalties are not damages or exemplary damages under Chapter 41.

### III.

### Conclusion

Because the certified questions in this case appear to be based on a faulty premise, I would decline to answer them and would either request briefing on the premise and decide that preliminary issue or advise the Fifth Circuit and parties of our concerns and decline to answer the questions. The Court elects to assume that the premise is correct and proceeds to provide answers that I conclude are incorrect. Therefore, I respectfully dissent.