

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00100-CV

JERRY MCKINNEY, D/B/A JERRY              APPELLANTS
MCKINNEY MOTOR COMPANY,
A/K/A JERRY MCKINNEY MOTORS

V.

RON WRIGHT, AS TAX ASSESSOR              APPELLEE
COLLECTOR OF TARRANT
COUNTY

----------

### FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 067-283422-16

----------

## MEMORANDUM OPINION[1]

----------

Appellant Jerry McKinney, d/b/a Jerry McKinney Motor Company, a/k/a Jerry McKinney Motors appeals from the trial court's judgment in this suit under chapter 23 of the Texas Tax Code. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## I. BACKGROUND

McKinney is a Texas motor vehicle dealer to whom the Texas Department of Motor Vehicles has issued a general distinguishing number. *See* Tex. Tax Code Ann. § 23.121(a)(3) (West 2015). He was required to file with the Tarrant County Tax Assessor-Collector a Dealer's Motor Vehicle Inventory Tax Statement providing certain information about every motor vehicle that he sold over the previous month or indicating that no motor vehicles were sold during the previous month. *See id.* § 23.122(e), (f) (West 2015). In addition, McKinney was required to deposit with the Tarrant County Tax Assessor-Collector a monthly unit property tax imposed on certain motor vehicles sold over the previous month. *See id.* § 23.122(b).

McKinney was required to file his monthly Dealer's Motor Vehicle Inventory Tax Statements and deposit his unit property tax no later than the tenth day of the month. *See id.* § 23.122(b), (f). For each statement he failed to timely file, McKinney was subject to a misdemeanor fine not to exceed $100, with each day of noncompliance constituting a separate violation. *Id.* § 23.122(m). In addition, for each month or part of a month in which McKinney failed to timely file a statement, he forfeited a penalty of $500. *Id.* § 23.122(n). With respect to the unit property tax, if McKinney failed to pay the amount due, he was subject to a penalty of five percent of the amount due. *See id.* § 23.122(o). And if he failed to pay the amount due within ten days after it was due, he was subject to an additional penalty of five percent of the amount due. *See id.*

The trial court conducted a bench trial in which the parties stipulated to all the findings of fact adopted by the trial court and agreed to the admissibility of Plaintiff's Exhibits 1 and 2. After the stipulations and admission of the exhibits, the parties rested and closed. The stipulated facts established that McKinney had failed to pay $1,904.07 in unit property taxes from 2014 through 2016 as required by section 23.122(b); that because of his failure to timely pay those unit property taxes, he owed $223.67 in late-payment penalties under section 23.122(o); and that because of his failure to timely file his Dealer's Motor Vehicle Inventory Tax Statements, he owed penalties in the amount of $127,002.95 under section 23.122(n). The trial court rendered judgment accordingly. In three issues, McKinney challenges the $127,002.95 in penalties he was assessed under section 23.122(n).

## II. CONSTITUTIONALITY

In his first issue, McKinney argues that the $127,002.95 in penalties violates the Texas constitution's prohibition against excessive fines. *See* Tex. Const. art. I, § 13. In his second issue, McKinney argues the penalties violate the Fourteenth Amendment's Due Process Clause because of their excessive nature. *See* U.S. Const. amend. XIV, § 1.

### A. APPLICABLE LAW

Article I, section 13 of the Texas constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed." Tex. Const. art. I, § 13. The term "fines" in this provision includes civil penalties. *Pennington v. Singleton*,

3

606 S.W.2d 682, 690 (Tex. 1980). Prescribing fines is a matter within the discretion of the legislature. *State v. Morello*, No. 16-0457, 2018 WL 1025685, at *6 (Tex. Feb. 23, 2018). And "we will not override the legislature's discretion, except in extraordinary cases, where it becomes so manifestly violative of the constitutional inhibition as to shock the sense of mankind." *Id.* (cleaned up).

Similarly, with respect to due process, the legislature has wide discretion when it comes to imposing fines and violates due process in doing so "only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Pennington*, 606 S.W.2d at 690 (quoting *St. Louis, Iron Mountain, & S. Ry. Co. v. Williams*, 251 U.S. 63, 66–67 (1919)).

## B. *STATE V. GALVESTON, HARRISBURG & SAN ANTONIO RY. CO.*, 97 S.W. 71, 78–79 (TEX. 1906)

McKinney argues that the penalties are an excessive fine under the supreme court's decision in *State v. Galveston, Harrisburg & San Antonio Ry. Co.*, 97 S.W. 71, 78–79 (Tex. 1906), in which he contends the court held that as a matter of law, a penalty exceeding 4,000% of the amount of delinquent tax is an excessive fine under article I, section 13 and therefore void. McKinney argues that because the $127,002.95 in penalties exceeds 6,500% of the amount of tax he failed to pay, the penalties constitute an excessive fine and are thus void under *Galveston*. We conclude *Galveston* is not applicable.

4

In *Galveston*, the legislature had enacted a statute that imposed an annual tax upon railroads that operated in the state. *See* 97 S.W. at 72. The railroads were required to pay the tax by October 1 every year. *Id.* If by November 1 a railroad had not paid the tax, the statute imposed a penalty of $200 per day until it paid the amount due. *Id.* at 73. Believing the tax to be unconstitutional, four railroads refused to pay the tax, and the State consequently sued them, seeking both the unpaid tax and the outstanding penalties. *Id.* at 73. The State prevailed at trial, and the trial court entered judgment in its favor for the amount of tax due, but it refused to enter judgment on the penalty, finding that it was "so excessive and unreasonable that [it was] void." *Id.* The court of civil appeals reversed, and the State appealed, arguing the trial court had erred by failing to enter judgment on the penalty. *Id.* at 78.

In evaluating whether the penalty was unconstitutionally excessive, the supreme court noted it was imposed for the railroads' failure to pay the assessed tax. *Id.* It stated that the penalty assessed against one of the railroads would have amounted to 100% of the delinquent tax it owed, and the penalty assessed against a second railroad would have amounted to 4,000% of the delinquent tax it owed. *Id.* The court concluded that

> [t]he assessment of a penalty of [100%] for the failure to pay a tax would seem to be sufficiently excessive to authorize a court to declare it to be excessive, but the assessment of more than [4,000%] upon the amount detained can leave no possible question that the penalties are out of all proportion to the amount of money detained, and the law must be held to be void for the penalties.

5

*Id.* at 78–79.

The statute and facts at issue in this case differ from those in *Galveston*. The statutory penalties McKinney challenges here were imposed not for his failure to pay the assessed unit property taxes but rather for his failure to file his statutorily mandated motor vehicle inventory tax statements.[2] And for that reason, his reliance on *Galveston* is misplaced. For in *Galveston*, the court analyzed whether the penalty at issue was an excessive fine by comparing the amount of tax the railroads failed to pay with the amount of penalty imposed for their failure to pay that tax. *See id.* But McKinney's argument is based on a different comparison, one the *Galveston* court did not make. McKinney compares the amount of unit property tax he failed to pay not with the amount of penalties imposed for his failure to pay but with the amount of penalties imposed for his failure to file his monthly motor vehicle inventory tax statements. *Galveston* is therefore inapposite.

### C. THE PENALTIES DO NOT "SHOCK THE SENSE OF MANKIND"

McKinney also argues the penalties are excessive because they are "wholly disproportioned to the offense" of failing to file his monthly motor vehicle

---

[2]We note that McKinney did incur a penalty for his failure to pay the unit property taxes he owed. The penalty for that failure amounted to $223.67, which is less than 12% of the $1,904.07 in tax he failed to pay, a far cry from the 100% and 4,000% penalties the two railroads in *Galveston* had respectively incurred for their failure to pay taxes.

6

inventory tax statements and are "obviously unreasonable and grossly excessive to the State's legitimate interest in collecting taxes."

Under tax code section 23.122(f), a motor vehicle dealer has the duty to file a motor vehicle inventory tax statement every month.[3] *See* Tex. Tax Code Ann. § 23.122(f). The duty to file those statements exists even for months in which the dealer sells no motor vehicles and, thus, owes no unit property tax. *See id.* The failure to file a statement is a misdemeanor, and each day during which a dealer fails to file a statement constitutes a violation. *See id.* § 23.122(m). In addition, a dealer's failure to file or timely file a statement results in a penalty of "$500 for each month or part of a month in which a statement is not filed or timely filed after it is due." *Id.* § 23.122(n).

The $127,002.95 in penalties that McKinney complains of were assessed under section 23.122(n). While the amount of those penalties is not insubstantial, section 23.122(n) is clear that the amount accrues monthly. *See Morello*, 2018 WL 1025685, at *6. The tax assessor-collector notified McKinney at least as early as November 2013 informing him that he had accrued a penalty of $1,000 for failing to comply with section 23.122(n), and he was notified on at least twelve occasions between November 8, 2013, and December 16, 2015,

---

[3]The statements are to include at least the following information: "(1) a description of each motor vehicle sold; (2) the sales price of the motor vehicle; (3) the unit property tax of the motor vehicle if any; and (4) the reason no unit property tax is assigned if no unit property tax is assigned." Tex. Tax Code Ann. § 23.122(e).

7

that he had failed to file his statements and that statutory penalties were continuing to accrue. *See id.* It was McKinney's own delay in complying with his statutory duty to file his statements that resulted in the continued accrual of civil penalties. *See id.* Therefore, the amount of the penalties does not "shock the sense of mankind." *Id.* (quoting *Pennington*, 606 S.W.2d at 690) (holding that $325,600 civil penalty for failing to comply with a provision of the water code, which accrued under a statute providing for a $50 per day penalty for failure to comply, was not unconstitutionally excessive and did not violate due process where the statute imposing it was clear that it accrued daily, the defendant was notified of his violations, and the defendant's own delay in complying with the statute caused the continued accrual of civil penalties). We overrule McKinney's first two issues.

### III. EXEMPLARY DAMAGES

In his third issue, McKinney broadly argues that the $127,002.95 in statutory civil penalties are subject to the requirements of chapter 41 of the civil practice and remedies code. He contends the Tarrant County Tax Assessor-Collector failed to comply with chapter 41, necessitating that we reverse the trial court's judgment and remand the case.

Chapter 41 applies "to any action in which a claimant seeks damages relating to a cause of action." Tex. Civ. Prac. & Rem. Code Ann. § 41.002(a) (West 2015). Thus, McKinney's argument necessarily assumes that by seeking to collect a penalty assessed under tax code 23.122(n), a county tax assessor-

8

collector is a "claimant seek[ing] damages relating to a cause of action." *See id.* As the supreme court has recently noted, "[c]hapter 41 does not define 'damages' but uses the term broadly to include compensatory, economic, noneconomic, future, and exemplary damages, all of which are defined." *Wal-Mart Stores, Inc. v. Forte*, 497 S.W.3d 460, 465 (Tex. 2016). Thus, the supreme court concluded, "[c]hapter 41 applies to 'any action' in which exemplary damages are sought." *Id.*

McKinney argues that by collecting the penalty provided under tax code section 23.122(n), the Tarrant County Tax Assessor-Collector is seeking exemplary damages, making the requirements of chapter 41 applicable to this case. He bases this assertion primarily on *Forte*, 497 S.W.3d at 467, but he also relies on *KBG Investments, LLC v. Greenspoint Property Owners' Association, Inc.*, 478 S.W.3d 111, 122–23 (Tex. App.—Houston [14th Dist.] 2015, no pet.), and *Henderson v. Love*, 181 S.W.3d 810, 817 (Tex. App.—Texarkana 2005, no pet.). However, all three of these cases involved a *private* litigant who sued to recover the statutory penalties or damages at issue, making them distinguishable from this case, where it is the *government* that seeks to collect the penalty at issue.[4] *See Forte*, 497 S.W.3d at 461–62 (addressing certified questions asking

---

[4]Additionally, as we note below, the tax code does not authorize a private party to recover the penalty provided by section 23.122(n). *See* Tex. Tax Code Ann. § 23.122(n), (p). That is unlike *Forte*, where the supreme court answered certified questions that "assume[d], perhaps incorrectly" that the pertinent statute authorized a private suit to recover a statutory civil penalty rather than authorizing only the government to do so, a question the supreme court declined

9

whether civil penalties provided by occupations code section 351.603(b), "*when sought by a private person*, are exemplary damages limited by Chapter 41 of the Texas Civil Practice and Remedies Code" (emphasis added));[5] *KBG Invs., LLC*, 478 S.W.3d at 116–23 (addressing whether statutory damages provided by property code section 202.004(c), which had been sought by a private litigant, constituted exemplary damages under chapter 41); *Henderson*, 181 S.W.3d at 816–17 (stating that liquidated damages provided by property code section 5.077(c), which had been sought by a private litigant, constituted exemplary damages under chapter 41).

Unlike the cases McKinney relies upon, the penalties McKinney challenges here were enforceable only by, and payable only to, the government. Section 23.122 expressly provides that "a dealer who fails to file or fails to timely file a statement as required by this section shall forfeit a penalty." *See* Tex. Tax Code Ann. § 23.122(n). This section further provides "[t]he appropriate district attorney, criminal district attorney, county attorney, collector, or person designated by the collector shall collect the penalty established by this section in

---

to resolve. *See Forte*, 497 S.W.3d at 462, 464. It is also unlike *KBG Investments* and *Henderson*, which involved statutes that authorized a private party to recover the statutory damages at issue. *See KBG Investments*, 478 S.W.3d at 116; *Henderson*, 181 S.W.3d at 813–14.

[5]The supreme court expressly declined to decide the merits of whether the Texas Optometry Act truly did authorize private litigants to sue to recover the civil penalties at issue but instead answered the certified questions as written by assuming that it did. *See Forte*, 497 S.W.3d at 464.

10

the name of the collector," and it further provides that such penalty is "the sole property of the collector, [and] may be used by no entity other than the collector." *See id.* § 23.122(n), (p).  This section of the tax code specifically authorizes the proper government official to collect a forfeited penalty—the amount of which is set by the code provision—not to sue for damages.  *See id.*  McKinney has pointed us to no authority, and our own research has not revealed any authority, for the proposition that when a government sues to collect a statutory penalty that is enforceable only by, and payable only to, the government, it is seeking recovery of exemplary damages, thereby making chapter 41 applicable in such cases.  *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 41.001(1), .002(a); *see also Forte*, 497 S.W.3d at 465 (noting chapter 41 "applies to 'any action' in which exemplary damages are sought").

We further note that in *Forte*, the supreme court described the notion that chapter 41 applies to the government's collection of a statutory civil penalty as "flawed" for at least two reasons:  "First, the [government] could rarely, if ever, recover damages, so the application of Chapter 41 would destroy [its] enforcement powers under the [statute].  And second, the imposition of sanctions by the government is limited by institutional constraints not present when the claimant is a private person."  *See Forte*, 497 S.W.3d at 467.  That same reasoning applies to the statutory penalty McKinney challenges here.

We conclude that when collecting a penalty assessed under tax code section 23.122(n), a county tax assessor-collector does not "seek[] damages"

11

and that consequently, chapter 41 is inapplicable to this case. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.002(a) (providing that chapter 41 applies "to any action in which a claimant seeks damages relating to a cause of action"). Accordingly, we overrule McKinney's third issue.

## IV. CONCLUSION

Having overruled McKinney's three issues, we affirm the trial court's judgment. Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  SUDDERTH, C.J.; GABRIEL and KERR, JJ.

DELIVERED:  June 14, 2018