In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-23-00348-CV
_____

**RYAN HIGHTOWER, Appellant**

**V.**

**RAYBURN COUNTRY ASSOCIATION, Appellee**

_____

**On Appeal from the 1st District Court**
**Jasper County, Texas**
**Trial Cause No. 38,874**
_____

**MEMORANDUM OPINION**

Ryan Hightower ("Hightower") appeals a final judgment granting a declaratory judgment and permanent injunction in favor of Rayburn Country Association ("Rayburn Country"). Rayburn Country filed a suit against Hightower for alleged violations of the "Restrictions, Reservations, Covenants and Conditions Applicable to Section 10 Rayburn Country" ("the Restrictions") of the Rayburn Country Subdivision ("the Subdivision"), seeking a declaratory judgment, alleging

1

claims for a breach of contract, and fraud, and requesting injunctive relief, civil damages, and attorney's fees. Hightower filed an answer, an amended answer, and a plea to the jurisdiction. The trial court denied the plea to the jurisdiction, held a bench trial, and entered a final judgment in favor of Rayburn Country. We affirm in part and reverse in part.

## BACKGROUND[1]

In July 2020, Rayburn Country filed its Original Petition for Declaratory Judgment and Application for Injunctive Relief against Hightower. In the Petition, Rayburn Country stated that it is a subdivision in Jasper County, Texas with certain restrictions on lots located in the Subdivision recorded in Jasper County. According to Rayburn Country, the Restrictions in effect include a lot in the Subdivision owned by Hightower ("the Property" or "Tract 31A"). Rayburn Country stated that in relevant portions, the Restrictions provide the following:

> 4. BUILDING RESTRICTIONS
> (e) No building or structure shall be erected except upon approval of the Environmental Control Committee, as provided in Paragraph 5; such Committee shall have the power to disapprove any plans for structures not in harmony with nearby structures or contrary to the substantial interests of other lot owners in this Section.
>
> 5. ENVIRONMENTAL CONTROL COMMITTEE:

---

[1]We limit our discussion of background facts to those necessary to the appeal's resolution. *See* Tex. R. App. P. 47.1 (requiring an appellate court to hand down an opinion as brief as practicable but that addresses every issue raised and necessary to the appeal's resolution).

2

(b) Two copies of plot plan, plans and specification and details of any proposed construction or alteration, including proposed construction material, color scheme and landscaping on any lot in said Subdivision shall be delivered to said Environmental Control Committee together with an examination fee of $30.00 to defray Committee expenses. Such plans shall be approved or disapproved within thirty (30) days after submission (except that, if not disapproved within such thirty (30) days, the plans shall be deemed approved), and all construction shall conform in detail to such plans and specifications so approved. Approval by this Committee shall in no way render the Committee, the Association or Rayburn liable for any defects in the plans or the work.

6. GENERAL REGULATIONS
(c) Once construction of improvements is started on any lot, the improvements must be substantially completed in accordance with the plans and specifications, as approved, within six (6) months from commitment.

12. ENFORCEMENT
(a) Rayburn and the Association, and their respective successors and assigns, and any person, firm or corporation owning any of the lots subject to the restrictions herein contained, or similar restrictions hereinafter imposed, may require (but no party shall have any affirmative obligation to take action to require) the observance of these conditions, restrictions, and covenants by the prosecution of any proceedings at law or in equity against any person, firm or corporation violating or attempting to violate the same to require removal of any such violation or to enjoin the attempted violation and shall also be entitled to sue for damages resulting from such violation. The Association alone shall be entitled to obtain a judgment for the unpaid charges provided herein.

Rayburn Country alleged that Hightower applied for a building permit on or about October 26, 2018, to construct a 30x30 detached garage on the Property, and the application provided for the construction of the following improvements relevant to this suit:

3

a. The driveway exited out of Hightower's property to Gatewood Court ("Gatewood"). No driveway was applied for to exit onto Wingate Boulevard ("Wingate").

b. The front of the building was to have rock installed like masonry covering some of the metal, to match the house.

On November 8, 2018, a permit was issued for the construction of the garage as applied for but required shrubs to be planted along the Wingate side of the structure. On February 13, 2019, the construction of the building was completed but representatives for Rayburn Country noted that the following did not comply with the permit:

a. No rock was installed like masonry on the garage to match the house;

b. No driveway was constructed to exit to Gatewood Court and instead, a green rock driveway was installed to connect the structure to Wingate Boulevard; and

c. No shrubbery was planted as required by the permit.

According to Rayburn Country, Hightower ignored its repeated requests that the issues be corrected.

Rayburn Country requested that a declaratory judgment be entered that Hightower had constructed improvements on the Property in a manner that violates the permit and is therefore in violation of the Restrictive Covenants of the

4

Subdivision. Rayburn Country requested a permanent injunction ordering Hightower to install the omitted shrubbery, install the omitted rock siding, install the drive to Gatewood Court and remove the driveway to Wingate Boulevard, enjoin Hightower from any further violation of the Restrictions, and that the trial court grant Rayburn Country reasonable expenses incurred in obtaining the restraining order and injunction. Rayburn Country also requested that the trial court award it $200.00 a day for each day the Property had been in violation of the Restrictions pursuant to Texas Property Code section 202.004(c) and for costs and reasonable and necessary attorney's fees pursuant to Texas Civil Practice and Remedies Code section 37.009.

Hightower filed Defendant's Original Answer and generally denied all allegations.

In February 2021, Rayburn Country filed its First Amended Petition for Declaratory Judgment and Application for Injunctive Relief, the live pleading at the time of the bench trial. In addition to its request for declaratory judgment and injunctive relief, Rayburn Country alleged a cause of action for breach of contract and fraud. Rayburn Country alleged that Hightower was granted a permit by the Rayburn Country Architectural Review Committee ("the Committee")[2] to build the garage under certain specific designs and plans, and he failed to comply with the

[2]The Rayburn Country Architectural Review Committee is also referred to as the Environmental Control Committee.

terms of the permit by not installing the driveway for the garage in the location shown on the application, did not install the shrubs as required, and did not include the stone exterior as described in the plans. Rayburn Country alleged that it "made demand that Defendant correct these construction variances and Defendant has failed to do so." It further asserted that the failure to correct the variances constituted a breach of contract, causing harm to Rayburn Country, which did not receive the benefit of the bargain it made with Hightower. Rayburn Country's fraud cause of action is based on Hightower's objection to and denial of the applicability of the Restrictions to the Property after being informed of his non-compliance with the permit. It claimed that it detrimentally relied on Hightower's representations that caused it to grant the variance to the setback requirements, review the plans submitted, grant the permit, and allow the construction without interference.

In August 2022, Hightower filed Defendant's Amended Answer and generally denied all allegations and included affirmative defenses and a request for attorney's fees. Specifically, Hightower claimed that Rayburn Country's claims were barred by illegality and estoppel.

In June 2023, Hightower also filed Defendant's Plea to the Jurisdiction and argued that the Property is located in a greenbelt carved out from the Restrictions of the Subdivision that is unencumbered by the Restrictions that Rayburn Country seeks to enforce. According to Hightower, the Property is a non-platted tract in the

6

community and not located within Section 10, the section referenced as being governed by the Restrictions. Hightower argued that the Property, located in the area shown as Parcel 10-1 of the Plat Map, is an area the original developer of the community identified as greenbelt tracts and reserved the right to govern the use and enjoyment of. Hightower contended that later conveyances of the greenbelt area did not have any new restrictions to limit the subsequent development of the greenbelt spaces or give Rayburn Country authority to govern tracts within the greenbelt area. As such, Hightower argued that Rayburn Country has no standing to invoke subject-matter jurisdiction and dismissal is proper.

Hightower attached exhibits to his plea. The exhibits included the Restrictions, Section 10 Plat Map, a Warranty Deed conveying the Property to Hightower from Rayburn Country Redevelopment, LLC, stating that it was "a part of Rayburn Country, Section 10, Parcel 10-1 as evidenced by a plat recorded" in the official county records, plat of the Property, a 1994 Warranty Deed conveying greenbelt tracts to Rayburn Country Association and stating that "the conveyance is made subject to any and all mineral reservations, restrictions, easements and covenants of record[,]" a 2010 General Warranty Deed conveying greenbelt tracts to Rayburn Country Redevelopment, LLC, which again states the greenbelt tracts were a part of the Rayburn Country Subdivision, and the Affidavit of David

7

Attwood, counsel for Hightower, swearing that the exhibits are true and correct copies.

Rayburn Country filed Plaintiff's Response to Defendant's Plea to the Jurisdiction and argued that the Property, also identified as Tract 31A, is located within an area formerly designated as parcel 10-1, and it is governed by the Restrictions. Rayburn Country stated that the Section 10 Restrictions apply and those restrictions state as follows:

> Whereas Rayburn Country Development Corporation… is the owner of the following described land situated in Jasper County, to wit:
> All of that certain property comprising Section 10, Rayburn Country, a Subdivision of 66.888 acres of land and being in one parcel and being out of and a part of 382.55 acres, more or less, out of Abstract 344, Lewis Letney League, in Jasper County, Texas, according to the map or plat thereof filed for record in the office of the County Clerk of Jasper County, Texas, on this 29th day of July, 1971, under County Clerk's File No. R-152, and recorded on Page 96 of the Plat Records of Jasper County, Texas, hereinafter sometimes referred to as "said Subdivision" []

Rayburn Country stated that the Restrictions further provide:

> NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS, that Rayburn, acting herein by and through its duly authorized officers, does hereby place and impose the restrictions, covenants, reservations and conditions hereinafter set out on the numbered lots in the above described property and does hereby provide that all said restrictions, covenants, reservations and conditions shall be covenants running with the land, that each contract or deed which may hereafter be executed with regard to any of the lots in said Subdivision shall conclusively be deemed to have been executed, delivered and accept subject thereto, that all owners of lots within said Subdivision shall be bound by the terms and provisions hereof[.]

8

Rayburn Country argued that these provisions make it clear that the Deed Restrictions apply to the entire 66.888 acres surveyed to create the Subdivision, including Tract 31A.

Next, Rayburn Country argued that the developer of the Subdivision retained ownership of the greenbelt, specifically "reserving to itself the right to govern the use and enjoyment" of it. Rayburn Country asserted that while the provision prevents Rayburn Country Association from governing the use and enjoyment of the greenway tracts while owned by the development, it did not remove the Restrictions from the greenway tracts or other tracts owned by the developer. Rayburn Country quoted language in the 2010 General Warranty Deed wherein Rayburn Country Association conveyed the greenbelt tracts to Rayburn Country Redevelopment that state "[t]his conveyance, however, is subject to all mineral reservations, restrictions, easements, covenants, and conditions of record in the office of the County Clerk of Jasper County, Texas, which relate to or in any way affect the above described property." Rayburn Country further argued that Hightower entered a written contract with Rayburn Country for the construction of the garage, paid a fee to Rayburn Country, and submitted plans for which a permit was granted. Rayburn Country contended it has causes of action for breach of contract and fraud based on these facts and Hightower's Plea to the Jurisdiction did not challenge standing on those claims.

The trial court denied Hightower's Plea to the Jurisdiction.

In July 2023, the bench trial began. The first witness, Amanda Haralson, testified that she is a past president of the Rayburn Country Association having served from January 2020 through September 2021, and is still on the Board. Haralson acknowledged that she was not on the Board at the time the garage in question was constructed in late 2018 but was on the Board in March 2019 when it was substantially completed. She testified that Hightower's property is in Section 10 of the Subdivision and in total, there are 38 sections. Haralson stated that she has reviewed the Restrictions applicable to Section 10 along with the Restrictions of other sections while acting as a board member, and she generally understands the Restrictions' requirements. She explained that the greenbelt properties are areas that provide safety, privacy, protect the watershed quality, and add to the neighborhood's aesthetic appearance. The Restrictions permit Rayburn Country to enforce and honor the Restrictions.

She testified that the trial was to enforce the Restrictions, and she was aware of the issue concerning whether the greenbelt properties are within the legal description of the sections. She stated that after reviewing the plat for Section 10 and the description of the land, the plat shows the greenbelt properties to be in that section and treated as part of Section 10 according to the metes and bounds and the

10

subdivision description. She testified that to effectively achieve the overall goal of the community, the Board must be vigilant and honor all deed restrictions.

Haralson testified that the Property contains a portion of the greenbelt traffic, and the garage that Hightower built sits on one of three tracts deeded to him by Rayburn Country Redevelopment. According to Haralson, the Committee reviews and administers permits for Rayburn Country. She stated that the property Restrictions require a property owner to apply for and receive a permit from the Committee prior to any construction on the property in the section.

Haralson explained that Hightower applied for a permit to the Committee to build a garage on Tract 31A in Section 10. A copy of the application was admitted into evidence, and Haralson stated part of the approval was the requirement that shrubs be planted along Wingate. The plat included with the application shows the garage facing Wingate and placed behind the utility easement and the 25-foot setback. Haralson testified that another document submitted by Hightower shows the driveway to the garage on Gatewood Court, the same street that his home faces. She indicated that the building design Hightower submitted showed a rock trim; however, the finished structure Hightower built did not have the rock trim as it is shown.

According to Haralson, Hightower paid the permit fee when he submitted the application, and Rayburn Country granted the permit. He applied for a variance from

the setback, and the Committee agreed to that variance. Haralson stated that the setback variance did not allow him to build a driveway to Wingate or to construct a building connected to Wingate.

Haralson testified that upon completion, the Board saw that Hightower did not comply with the permit's terms. For example, the driveway was connected to Wingate, the garage did not match the rock façade on the home, and the shrubs were not immediately put in place. Haralson had stated to the Committee that the backyard would be screened, the garage would be screened by shrubbery, and the driveway would not go to Wingate. Haralson explained that while the Committee makes some discretionary decisions, it is the Committee's responsibility to maintain and uphold the Subdivision's integrity while trying to serve the property owners' needs. So, although there are no specific restrictions about building a driveway to Wingate or that shrubbery screenings are required, certain requirements are negotiated into the permits to respect the integrity of the Subdivision. She stated that not allowing a driveway to Wingate was for safety purposes and to continue to honor the integrity of the greenbelt that runs on both sides of the street. Since a driveway is considered construction activity, it requires a permit, whether it be rock, asphalt or concrete.

Haralson indicated that Hightower did not have a permit to construct a driveway from his new garage to Wingate, therefore he violated the building permit. His garage also required a permit and violated the Restrictions. According to

Haralson, when the Committee puts conditions on a permit that a person applies for, the property owner either agrees to it, or if they cannot come to an agreement, the building does not happen. By signing the application seeking a permit, paying the fee, and agreeing, Hightower obligated himself to the permit's terms. Haralson stated that if Hightower's permit included a driveway from the garage onto Wingate, it would not have been approved by the Committee. If Hightower had begun construction of the garage and driveway without applying for a permit, Rayburn Country would have filed a lawsuit seeking a temporary restraining order until it could be resolved.

Haralson testified that the Committee sent Hightower a letter dated February 13, 2019, that asked Hightower to finish the rock on the garage, remove the green rock drive, and build the driveway to Gatewood Court, as agreed. Hightower did not correct the violations. A second letter dated August 27, 2019, was sent to Hightower requesting compliance and she was never informed that Hightower expressed to any Board member that he did not have to comply with the permit because his property was located in the greenbelt tract. Haralson testified that she first learned of Hightower's belief during litigation, and he never raised this issue when he applied for the permit or when he was asked to comply with the permit.

According to Haralson, Wingate is the primary entrance into the residential section between FM 1007 and Lake Rayburn with a greenbelt on each side. Then

13

when approaching Hightower's property, the greenbelt is destroyed where he constructed the non-permitted driveway on Wingate. Haralson recalled another neighbor constructing a non-permitted concrete driveway on Wingate after Hightower and Rayburn Country sought an enforcement action against the homeowner, and he removed the driveway by jackhammer.

Haralson testified that given Hightower's noncompliance with Rayburn Country's requests, the Board voted to file the lawsuit to maintain the integrity of the deed restriction and for properties to be built as permitted. She stated that this is not a common occurrence and that the Board gave Hightower an opportunity to meet, but he did not respond. The Board hired an attorney and incurred attorney's fees that were ongoing through the hearing. Hightower's building was completed in early 2019, and Hightower has been in violation approximately 1400 days. She believed that the sanction or penalty of $200 per day allowed by the Texas Property Code is appropriate here to "drive home the importance" of complying with deed restrictions and the building permit. Haralson testified that she believed Hightower intentionally violated the permit, and he knew of the Restrictions before building the driveway and garage because he sought the permit. Haralson stated that if the Court finds that Hightower violated the Restrictions and permit, and breached the contract, she would like for him to construct the driveway off the street that his home faces as the

14

permit showed it was to be, remove the driveway to Wingate, and restore the greenbelt with the type of shrubbery that naturally exists there.

On cross-examination, Haralson testified that she was unaware of Hightower filing a counterclaim to determine if the greenbelt is unrestricted, but she was aware of the plea to the jurisdiction that he filed. Haralson testified that she feels that damages are fitting to uphold the Subdivision's integrity, serve the neighbors, uphold the deed restrictions, and ensure that people honor the contract or permit they have entered.

Haralson stated that there are properties that have a driveway to Wingate but not when it can connect to the street that the house faces. Homes with driveways to Wingate have been permitted to do so because there is no other ingress or egress from their property. Haralson testified that she does not know if any greenbelt tracts that were sold could have a driveway to Wingate. She was unaware of residences or garages on other greenbelt tracts, but she believed some greenbelt tracts have other structures. Haralson stated that to her knowledge, there have not been driveways permitted to Wingate from lots that were not set up as lots and did not have other ingress or egress. She acknowledged that there are driveways from platted lots to Wingate because there was no side street or other street to access the property.

According to Haralson, since 2020, the Board had given Hightower an opportunity to discuss the violations of the Restrictions. Although the Board sued

15

Hightower in 2020, it gave Hightower notice in 2023 that he could dispute the violations and request a hearing pursuant to Chapter 209 of the Texas Property Code. Hightower did not have a hearing before the Board until May. The Board denied Hightower's appeal in the hearing and continued to seek his compliance with the permit. Haralson testified that the Board's biggest concern was Hightower's driveway to Wingate. She stated that the dangerous nature of Wingate is the reason that the Committee does not allow access to Wingate from certain lots.

During the trial, a document titled "Analysis of Pictures Submitted by Mr. Hightower of Driveway Access on Wingate" was admitted as evidence. The document states that it was prepared by Johnny Dawson. Haralson testified that she was familiar with the document and that it appeared to show lots or tracts that connect to Wingate. To the best of her knowledge, the document appeared to be correct where Dawson notes that the Committee had permitted access or where access was created by the developer to Wingate on certain lots. She stated that while she was familiar with some of the driveways, she was not on the Board or Committee in approving or permitting these driveways. Haralson testified that the driveways are either from a landlocked lot where there is only ingress/egress to Wingate or are part of a cul-de-sac. She stated that to her knowledge, the Committee does not grant access to Wingate except when there is no other access available to an established platted lot.

Haralson acknowledged that Hightower's application did not mention shrubs, but that the shrubbery is mentioned on the checklist provided by the Committee. Haralson testified that she understood the trim that Hightower's application indicated would match the existing residence, to be the wainscoting or rock trim though it is not worded as such.

On re-direct, Haralson explained the reasons some lots have access to Wingate. Haralson stated that some have no other access to get in and out other than Wingate, and some access was created by the developer, which is not Rayburn Country. According to Haralson, one lot on the document, 168 Angleridge, had an unimproved and nonpermitted drive to Wingate, and the Board took steps to prevent that access. Haralson explained that lot owners sometimes use shortcuts for their golf carts, and this is probably the same at 436 Angleridge. She noted that 1793 Wingate had a permitted shop with a gap in the fence, and Rayburn Country took steps to enforce the restriction and not allow access to Wingate. She further noted that a lot identified as Picture 20 is the concrete driveway that the Board required be removed. Haralson testified that the Board was not intentionally ignoring driveways onto Wingate, and the Board had no ability to enforce a driveway onto Wingate permitted prior to Rayburn Country's ownership and over four years of age.

According to Haralson, if Hightower sold any of his lots located in the greenbelt, she does not believe that the Committee could issue a permit to build a

17

home, and that the property could be a landlocked tract or a tract only to be used as a green space. The Committee would not normally grant a permit to construct an outbuilding or garage on a lot not connected to a home owned by the same owner in Section 10 since it is one of the nicer areas.

On re-cross, Haralson explained that a potential buyer would likely be unable to build on one of Hightower's lots as a residential lot if he sold one because Section 10 has size requirements, and she does not believe a home could be made to fit on that lot. Haralson testified that she did not know where in the Restrictions for Section 10 it prevents the Board from allowing a property owner from building a home on a half-acre tract. Haralson acknowledged that she did not have the permits with her that permitted access to Wingate for the lots on the document prepared by Johnny Dawson, and she does not believe the permits were produced in discovery.

Keith Landry, a member of the Rayburn Country Association Board testified that he is part of the Committee tasked with granting permits and ensuring Restrictions are followed. Landry testified that he has been on the Committee since March 2019, and he informs the Board of any violations, and he takes pictures of it. As a member of the Committee, Landry testified that he is familiar with Hightower's property and the application Hightower filed, as well as the permit that was granted. He stated that he inspected and documented Hightower's violations of the permit.

And photos identified as exhibits 11, 12, 13, and 14 accurately depict the garage and some of the violations.

Landry testified that the photos show a lack of compliance with the permit and that the garage does not have the wainscoting, the driveway is to Wingate, there are no shrubs, and there is no driveway to Gatewood. Landry testified that on the permit application there is no driveway to Wingate, and that the wainscoting, that he identified as a stone texture, was missing despite being included in the photo with the permit application.

According to Landry, on July 10, 2019, he sent a letter to Hightower giving him the opportunity to meet with the Board or Committee in the hopes of coming to a resolution. The letter asked that Hightower contact the Committee to discuss its proposal to remedy the violations and avoid litigation, but Hightower did not respond. In total, three letters were sent about the violations, but Hightower did not take action to correct any of the violations.

Landry acknowledged that the letter did not give Hightower a period to cure the violations or to request a hearing within thirty days in front of the Board. Landry testified that he did not advise Hightower of any special rights or relief related to the Servicemembers' Civil Rights Relief Act. Landry became a member of the Committee in March 2019, and he was not a part of Hightower's application process. Landry stated that property owners pay assessments on the land that is part of their

property, including greenbelts. He testified that he does not believe property owners of a greenbelt tract get additional votes for the greenbelt purchased, but he is not sure.

Landry agreed that a February 13, 2019, letter to Hightower about his violations requested that the violations be remedied by March 15, 2019. Landry also stated that he is familiar with Hightower's application and admitted that he did not see where green rock, wainscoting, or shrubs were mentioned, nor is he aware of restrictions that require wainscoting or shrubs.

Counsel for the Board also testified about his work history, his hourly rate, and the hours he has worked on this case.

Hightower's attorney recalled Haralson to testify. She stated that she began serving as president of the Board in 2020, and she agreed that the lot consolidation policy stated that "lot or lots" means the lot or lots as platted in the last plat or replat for each section as recorded in the plat map records of Jasper County, Texas.

Ryan Hightower testified that he lives in Section 9 of Rayburn Country and does not live in Section 10. He stated that he purchased several tracts in the former greenbelt area and he identified the tracts as 31A, 32A, and 33A. There is no development on the tracts, and Hightower confirmed that he does not get a vote for those tracts. He stated that he purchased the greenbelt tracts to build a garage. According to Hightower, he purchased the tracts after they were advertised as a

home site, and after the purchase he was contacted by Clyde Pederson, a Committee member and the community manager, about the permit application. He recalled that he made an initial application, but it was denied because Pederson wanted revised drawings of options for driveways. Hightower complied by providing two additional drawings; however, none of the drawings were included in the application that Rayburn Country produced as evidence. According to Hightower, he had to use the drawing provided by Pederson if he wanted his permit request approved. The Committee approved the last application, and the contractor reviewed the drawing and informed Hightower that he did not have enough real estate to go over the electrical lines to his home. Hightower testified that Pederson granted a temporary driveway until they could come to a resolution for the issues, but he did not get a resolution from the Association.

According to Hightower, Wingate is not a busy commercial or residential road since most people only come on the weekends. He explained that the end of Wingate is a roundabout, so it is not a through street.

Hightower admitted that the photo of the garage submitted had wainscoting, and he does not have a copy of the permit application with the driveway from the garage onto Wingate. Hightower further admitted that the permit reviewed and approved by the Committee had the driveway to Gatewood Court. He testified that he began building his garage in compliance with the permit and that he installed a

21

rock driveway to Wingate because it was temporarily granted by the Committee due to issues with the other route. He stated that he did not get permission in writing, but it was granted in a phone conversation. Hightower acknowledged that the driveway was installed to help him build the garage only and that initially he was to remove it once construction was completed. However, once he learned of complications with the other route, he did not agree to move it.

Hightower testified that the Committee offered the opportunity to have a hearing, but he did not request a hearing, did not remove the rock driveway, did not remove or add the wainscoting, and did not add the oleanders to block the view of the building after receiving letters from the Committee.

According to Hightower, when he applied to build the garage, he was unaware of any restriction in Section 10 that prevented him from accessing Wingate. He stated that he still does not know of such a restriction. Hightower stated that he did not include installation of shrubbery in his application, and the Committee did not say he needed to plant oleanders or install wainscoting. He testified that the Board did not work to find accommodations to allow a driveway to Wingate, and he only had conversations with Pederson on behalf of the Committee. Hightower testified that the cost of a driveway to Wingate is between $6,500-$7,000, while a concrete driveway to Gatewood is close to $20,000.

On July 26, 2023, the trial court issued a letter ruling that was later incorporated into a Final Judgment and Permanent Injunction. The Final Judgment and Permanent Injunction stated the following:

1. A Declaratory Judgment is hereby GRANTED that Defendant, Ryan Hightower, constructed improvements on his property described as Being Lot 31A, Section 10, Rayburn Country, a subdivision in Jasper County, Texas, according to the plat thereof recorded in Volume 1, Page 106, Plat Records, Jasper County, Texas, (the "Property") and such improvements violated the building permit issued to him by Rayburn Country Association, and therefore the Restrictions, Reservations, Covenants and Conditions Applicable to Section 10 Rayburn Country, by:

    a. constructing a driveway on the Property from the garage to Wingate Blvd;

    b. failing to install rock siding on the garage located on the Property;

    c. failing to plant shrubbery on the Property between the garage and Wingate Blvd.

2. The Court finds that the construction of the improvements in a manner that violated the building permit issued to him by Rayburn Country Association, further constituted a breach of contract by Defendant Ryan Hightower.

3. FRAUD

   The Court FINDS that Defendant Hightower did not commit fraud against Plaintiff Rayburn Country Association. THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that Plaintiff shall take nothing from Defendant on Plaintiff's claims of fraud.

23

4. PERMANENT INJUNCTIONS

IT IS SO ORDERED that Defendant Ryan Hightower, and all persons acting in concert with him or on his behalf are permanently enjoined as follows:

   a. Within 90 days after the date of judgment, Defendant Ryan Hightower shall remove the driveway connecting to the garage on the Property to Wingate Blvd., to achieve compliance with the permit.

   b. Within 90 days after the date of judgment, Defendant Ryan Hightower shall install rock siding on the garage on the Property, facing Wingate Blvd, to achieve compliance with the permit.

   c. Within 90 days after the date of judgment, Defendant Ryan Hightower shall plant shrubbery in front of the garage on the Property, facing Wingate Blvd, to achieve compliance with the permit.

5. It is ORDERED, ADJUDGED AND DECREED that a Judgment is granted to Plaintiff, Rayburn Country Association, from Defendant Ryan Hightower, in the amount of $5,000.00 as attorney's fees through the date of the judgment.

6. It is ORDERED, ADJUDGED AND DECREED that Plaintiff is further awarded additional contingent attorney's fees in the amount of $6,000 if an appeal of this cause is made to the court of appeals; and additional attorney's fees of $2,500 in the event either party files a Petition for Review in the Supreme Court of Texas; and additional attorney's fees of $8,000 in the event the Petition for Review is granted, and all posttrial attorney's fees awarded in the paragraph are contingent on Plaintiff prevailing;

7. It is ORDERED, ADJUDGED AND DECREED that Plaintiff Rayburn Country Association is awarded civil penalties from Defendant Ryan Hightower, pursuant to Texas Property Code 202.004(c), in the amount of $25.00 per day beginning on the 91st day

after judgment, and contingent on Defendant having failed to comply with the above granted Injunctions.

8. It is ORDERED, ADJUDGED AND DECREED that Plaintiff Rayburn Country Association is awarded judgment for its costs of court;

9. It is ORDERED, ADJUDGED AND DECREED that Plaintiff Rayburn Country Association is awarded judgment for interest on the total amount of judgment at the rate of 8.25% [] per year on the total judgment from the date of judgment until paid, compounded annually.

10. It is ORDERED that Plaintiff shall have all writs of execution and other process necessary to enforce this judgment.

11. IT IS FURTHER ORDERED that all relief requested in this matter that is not otherwise granted in this judgment is hereby DENIED. This judgment finally disposes of all parties and all claims and is appealable.

Upon Hightower's request, the trial court entered Additional Findings of Fact and Conclusions of Law. The Additional Findings and Conclusions stated:

The Court enters the following Additional Findings of Fact and Conclusions of Law:

## I. ADDITIONAL FINDINGS OF FACT

1. The Court finds that Defendant's property, "Tract 31A," is located in the greenbelt Parcel 10-1 area in Section 10 and is located within the recorded plat map for the Subdivision.

2. The Court finds that, though there are no restrictions in the Declaration of Restrictions, Reservations, Covenants and Conditions for the Subdivision prohibiting property access to Wingate Boulevard, Defendant's Application and Permit is an enforceable restriction limiting Defendant's right to access Wingate Boulevard and limiting his right to construct improvements on his property.

3. Pursuant to TEX. PROP. CODE ANN. § 202.004(a), the Court finds, by a preponderance of the evidence, that Plaintiff Rayburn Country Association did not act arbitrarily or capriciously in exercising its discretionary authority over Defendant.

## II. ADDITIONAL CONCLUSIONS OF LAW

4. The Court concludes that Defendant's "Tract 31A" is subject to the restrictions in the Rayburn Country Declaration.

5. The Court concludes that Plaintiff had standing to enforce the restrictions in the Rayburn Country Declaration against Defendant's "Tract 31A," and that the Court had subject-matter jurisdiction over Plaintiff's claims.

Upon Rayburn Country's request, the trial court also entered the following Additional Findings of Fact and Conclusions of Law:

26

**The Court enters the following Findings of Fact and Conclusions of Law**

### A. ADDITIONAL FINDINGS OF FACT

The Court finds that Defendant's property made the basis of this suit is located within the recorded plat map for Rayburn Country Section 10.

The court finds that Defendant did not rebut the presumption that Rayburn Country acted reasonably in its enforcement of the restrictions.

### B. ADDITIONAL CONCLUSIONS OF LAW

The Court concludes that Defendant's property made the basis of this suit is subject to the restrictions described in the Declaration of Restrictions, Reservations, Covenants and Conditions for Rayburn Country Section 10.

The Court concludes that Plaintiff had standing to enforce the restrictions in the Rayburn Country Declaration against Defendant's property made the basis of this suit.

The Court concludes that the Court had subject-matter jurisdiction over Plaintiff's claims.

Hightower argues three issues on appeal. In his first issue, Hightower challenges the trial court's subject matter jurisdiction over Rayburn Country's claim. Next, Hightower argues that if jurisdiction is proper, the trial court committed harmful error in awarding Rayburn Country relief when there was no evidence of a violation of a recorded restrictive covenant. Hightower then argues that if the trial court did not have jurisdiction, or the trial court erred in granting its judgment, he requested a limited remand for consideration of attorney's fees under Texas Civil Practice and Remedies Code section 37.009. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009.

**Plea to the Jurisdiction**

"A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction." *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638

27

(Tex. 2004) (citations omitted). The purpose of a plea to the jurisdiction is to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Subject matter jurisdiction is essential to the authority of the court to decide a case and is never presumed and cannot be waived. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). Whether a court has subject matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must consider evidence, "even if the evidence implicates both subject-matter jurisdiction and the merits of a claim." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770–71 (Tex. 2018) (citations omitted). The standard when considering such a plea generally mirrors the standard for considering a traditional motion for summary judgment under Texas Rule of Civil Procedure 166a(c). *Miranda*, 133 S.W.3d at 228. The trial court reviews the evidence and determines whether a fact issue exists. *Id.* at 227. "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id.* at 227–28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter

28

of law." *Id.* The parties must have a justiciable controversy, and in the context of the UDJA, "'the declaration sought must actually resolve the controversy.'" *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 685 (Tex. 2020) (quoting *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 164 (Tex. 2004)).

On appeal, Hightower argues that Tract 31A is an unplatted tract carved out of the Parcel 10-1 greenbelt area and unencumbered by the lot restrictions provided for in the platted lots in Section 10. He contends that Rayburn Country provided no evidence that Tract 31A was a platted lot or that the plat map was ever revised or amended to include Tract 31A. Hightower asserts that the language of subsequent conveyances of Parcel 10-A greenbelt area noting that the conveyance is "subject to" restrictions of record does not create new restrictions or serve as confirmation that restrictions of record exist.

In October 2018, Hightower submitted his Building Permit Application to Rayburn Country Association. Included with the application, was a Plot Plan that indicated that the driveway to the garage was to connect to Gatewood Court. This was the application that the Committee reviewed and approved. Submission of the application indicates that Hightower knew that his Property was located in Section 10 and that it was encumbered by the Restrictions that required Committee approval. Therefore, based on this authority, Rayburn Country had standing to sue to enforce the building requirements of the approved application. Additionally, evidence in the

29

form of the restrictive covenants was admitted at trial, showing that the Committee had the right to approve construction, and that property sold within the Subdivision was subject to the Restrictions and Covenants. The deeds transferred from each owner down to Hightower showed that the lots carved out of the greenbelt were in the Rayburn Country Subdivision, Section 10, and subject to those restrictive covenants. Thus, a justiciable controversy between the parties, i.e., whether Rayburn Country had the right to enforce these covenants and whether the permit constituted a contract Hightower breached, existed between the parties. *See Lynch*, 595 S.W.3d at 685. Therefore, the trial court had subject matter jurisdiction. We overrule Hightower's argument that the trial court lacked subject matter jurisdiction.

**Challenge to Final Judgment**

In a bench trial, the trial court, as factfinder, is the sole judge of the witnesses' credibility and weight of the evidence and is tasked with resolving conflicts in the evidence and drawing reasonable inferences from basic facts to ultimate facts. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819–21 (Tex. 2005); *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004) (citation omitted); *see also Morrell v. Morrell*, No. 09-20-00086-CV, 2022 WL 959943, at *12 (Tex. App.—Beaumont Mar. 31, 2022, pet. denied) (mem. op.). The trial judge as factfinder may choose to believe one witness over another, and we do not substitute our judgment for the factfinder's. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex.

30

2003) (discussing in context of a jury trial); *see also Morrell*, 2022 WL 959943, at *12. When a trial court makes specific findings of fact and conclusions of law after a bench trial and a reporter's record is before the appellate court, we sustain the findings if evidence supports them, and we will review the legal conclusions drawn from the facts to determine their correctness. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Morrell*, 2022 WL 959943, at *12. "Findings of fact 'have the same force and dignity' as a jury's verdict and are reviewable under the same standard of legal and factual sufficiency." *Foley v. Capital One Bank, N.A.*, 383 S.W.3d 644, 646 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (quoting *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991)); *see Morrell*, 2022 WL 959943, at *12 (citation omitted).

If a reasonable factfinder could, we credit evidence that favors the finding in a legal sufficiency challenge, and disregard evidence contrary to the challenged finding unless a reasonable factfinder could not disregard it. *See City of Keller*, 168 S.W.3d at 827. When a party attacks the legal sufficiency of an adverse finding on an issue which he did not have the burden of proof, the party must show there was "no, or insufficient, evidence" to support the finding. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Healey v. Romero*, No. 05-16-00598-CV, 2018 WL 2126903, at *1 (Tex. App.—Dallas May 7, 2018, no pet.) (mem. op.) (discussing standard of review in the context of the partial performance exception). When

31

considering the no-evidence standard of review, we consider the evidence in the light most favorable to the finding and indulge every reasonable inference in support of it. *See City of Keller*, 168 S.W.3d at 822. "Anything more than a scintilla of evidence is legally sufficient to support the finding." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998).

In a factual sufficiency review, we examine all the evidence, and we will set aside the judgment if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *see also Unimex Logistics, LLC v. Tim Neff Towing, Inc.*, No. 09-16-00275-CV, 2018 WL 2339623, at *4 (Tex. App.—Beaumont May 24, 2018, no pet.) (mem. op.) (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)).

"We review a trial court's conclusions of law as legal questions, *de novo*, and will uphold them on appeal if the judgment can be sustained on any legal theory supported by the evidence." *Morrell*, 2022 WL 959943, at *12 (citing *BMC Software Belg.*, 83 S.W.3d at 794); *see also Hegar v. Am. Multi-Cinema, Inc.*, 605 S.W.3d 35, 40 (Tex. 2020). If we determine a conclusion of law is erroneous, we will not reverse if the trial court rendered the proper judgment. *See BMC Software Belg.*, 83 S.W.3d at 794; *see also City of Austin v. Whittington*, 384 S.W.3d 766, 779 n.10 (Tex. 2012) (citation omitted).

32

We review a trial court's interpretation of a restrictive covenant de novo. *See Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 279 (Tex. 2018). Restrictive covenants are subject to the general rules of contract construction. *Id.* at 280 (citations omitted). In construing covenants, we give effect to the drafters' objective intent of the covenant as reflected in the chosen language. *See id.*

Hightower argues the trial court committed error by entering a final judgment in favor of Rayburn Country without any evidence of a violation of a restrictive covenant by Hightower. According to Hightower, Rayburn Country failed to submit evidence of a breach of a specific restrictive covenant and the breach of contract judgment is error because the permit does not constitute a contract. Next, Hightower argues it was error to award civil punitive damages in the event he does not comply with the mandatory injunction because there was no violation of a restrictive covenant, no award of actual damages, and because punitive damages would amount to a double recovery. Finally, Hightower argues it was error to award permanent mandatory injunctive relief without evidence of a substantial breach of a restrictive covenant.

**A. Declaratory Relief**

First, we consider if the trial court properly granted Rayburn Country's declaratory judgment by determining if Tract 31A is subject to the Restrictions of the Subdivision. In its final judgment the trial court granted Rayburn Country

33

declaratory judgment that Hightower constructed improvements on Tract 31A and in a manner that violated the building permit issued to him by Rayburn Country, and therefore violated the Restrictions by:

a. Constructing a driveway on the Property from the garage to Wingate Blvd;

b. Failing to install rock siding on the garage located on the Property; and

c. Failing to plant shrubbery on the Property between the garage and Wingate Blvd.

In its Findings of Fact and Conclusions of Law, the trial court found that "[Hightower]'s property, 'Tract 31A,' is located in the greenbelt Parcel 10-1 area in Section 10 and is located within the recorded plat map for the Subdivision[]" and the trial court concluded that "[Hightower]'s 'Tract 31A' is subject to the Restrictions in the Rayburn Country Declaration." The trial court further concluded that "[Hightower]'s property made the basis of this suit is subject to the restrictions described in the Declaration of Restrictions, Reservations, Covenants and Conditions for Rayburn Country Section 10."

The evidence at trial supports these findings and conclusions. The plain language of the Restrictions state that the Subdivision and Section 10 are subject to the Restrictions, that the Restrictions are imposed on the numbered lots, that all owners of lots within the Subdivision are bound by the Restrictions, that owners had to submit an application for approval to the Committee of any construction or alteration, and that the Committee had the authority to approve or disapprove all

34

plans and issue permits. At trial, the trial judge heard testimony from Haralson that she reviewed the plat for Section 10 and the description of the land, and that the plat shows the greenbelt properties to be in the section and it should be treated as part of the section according to the metes and bounds and the divisional description. Before the trial judge was the plat map that identified an area as Parcel 10-1, and the trial judge heard testimony that Tract 31A is property that was later carved out of Parcel 10-1 and sold. The Restrictions applicable to Section 10 were also before the trial court and though the Restrictions state that the restrictions, covenants, reservations, and conditions are placed and imposed on the numbered lots, the Restrictions go on to state that Rayburn Country Development Corporation reserves the right to impose further restrictions on any unsold site in said Subdivision. Though Tract 31A was an unsold site in the Subdivision it was numbered and identified as Parcel 10-1 on the plat map at the time the Restrictions were filed and recorded, and it was subject to the Restrictions of Section 10.

The Restrictions further authorize Rayburn Country to enforce the terms and conditions of the Restrictions and authorizes the Committee to approve or disapprove plans and specifications of any proposed construction, "including proposed construction material, color scheme and landscaping[.]" Additionally, the Restrictions require that an owner provide plot plans, plans, specifications and details of any proposed construction to the Committee for approval. And though the

Restrictions do not prohibit driveway access to Wingate, the plot plan that Hightower submitted with his application indicated that driveway access would connect to Gatewood, not Wingate. Here, the Restrictions require construction plans to be approved by the Committee and require a permit be issued before construction can begin. In the Restrictions, section 4(e) states, "No building or structure shall be erected except upon approval of the [] Committee, as provided in Paragraph 5; such Committee shall have the power to disapprove any plans for structures not in harmony with nearby structures or contrary to the substantial interests of other lot owners in this Section." Section 5(b) of the Restrictions provides "all necessary documents to be submitted to the Committee for approval, including plot plans, plans and specifications and details of any proposed construction or alteration, including proposed construction material, color scheme and landscaping" and states that the plans shall be approved or disapproved. The plans that Hightower submitted with his application for a permit indicated that the driveway would connect to Gatewood and that the exterior of the garage would match the residence. A photo included with the application indicated that the garage would have rock siding trim, and the approval granted by the Committee required Hightower to plant shrubs along Wingate. Because this was the plan approved by the Committee, the requirements outlined in the permit were enforceable by Rayburn Country. We conclude that the evidence is legally and factually sufficient to support the trial court's determination

36

that Tract 31A is subject to the Restrictions, that the Restrictions expressly provide the Committee had the authority to regulate, approve, or deny the construction, that Hightower applied for a permit for specific construction, that the Committee approved a permit, that Hightower violated the Restrictions and provisions outlined in the permit, and that the trial court did not err when it granted Rayburn Country's declaratory judgment.

**B. Breach of Contract**

Next, Hightower argues that the trial court's breach of contract finding is in error because the building permit does not constitute a contract and there was no evidence of a violation of an applicable restrictive covenant. We need not determine whether the permit issued by Rayburn Country constitutes an enforceable contract because to establish a breach of contract claim the movant must also establish damages. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018) (citations omitted) (stated that the essential elements of a breach of contract are a valid contract, performance, breach, and damages); *Ototronix, LLC v. Integer Holdings Corp.*, 09-22-00206-CV, 2024 WL 4850049, at \*4 (Tex. App.—Beaumont Nov. 21, 2024, no pet.). Here the trial court did not award any damages to Rayburn Country. Therefore, we sustain part of issue two and strike that part of the judgment and finding regarding the breach of contract claim. *See Menchaca*, 545 S.W.3d at 501 n.21; *Ototronix,* 2024 WL 4850049, at \*4.

37

## C. Permanent Injunction & Civil Damages

Next, Hightower argues that the trial court erred in awarding permanent injunctive relief without evidence of a substantial breach of a restrictive covenant and abused its discretion in awarding civil punitive damages to Rayburn Country should Hightower not comply with the mandatory injunction. The trial court issued a permanent injunction and ordered that within ninety days of the judgment, Hightower must remove the driveway to Wingate, install rock siding on the garage, and plant shrubbery in front of the garage facing Wingate. The trial court further stated it awarded Rayburn Country civil penalties from Hightower in the amount of $25.00 per day beginning on the 91st day after the judgment, if Hightower fails to comply with the "granted Injunctions." Hightower argues that without a finding of actual damages, the trial court's award of civil damages is punitive in nature and requires a finding of actual damages.

As detailed above, the trial court had evidence that Hightower failed to comply with the Restrictions by failing to comply with the conditions of the approved permit as the Restrictions require. It is true that the Texas Property Code allows a court to "assess civil damages for the violation of a restrictive covenant in an amount not to exceed $200 for each day of the violation." Tex. Prop. Code Ann. § 202.004(c). Hightower argues that the trial court's award of twenty-five dollars a day for prospective noncompliance with the injunctions amounts to an award of civil

damages that are punitive in nature and are exemplary damages as defined by Chapter 41 of the Texas Civil and Practice Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.001(5) ("'Exemplary damages' means any damages awarded as a penalty or by way of punishment but not for compensatory purposes. Exemplary damages are neither economic nor noneconomic damages. 'Exemplary damages' includes punitive damages."). Chapter 41 further states that "exemplary damages may be awarded only if damages other than nominal damages are awarded." *Id.* § 41.004(a).

Here, Rayburn Country sought actual damages under Property Code section 202.004(c) for $200 a day for 1400 days of past noncompliance with the permit, but the trial court refused to award such damages. In fact, the trial court did not award any actual damages or statutory damages for past noncompliance. Instead, the trial court awarded Rayburn Country only declaratory and injunctive relief.

Appellant contends that *KBG Invs., LLC v. Greenspoint Property Owners' Ass'n, Inc.*, 478 S.W.3d 111, 122–23 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (explaining that civil damages under Texas Property Code section 202.004(c) are prohibited under Chapter 41 when no actual damages were awarded), controls this case and the trial court's prospective award of $25 a day violates the punitive damage provision in "Chapter 41." We agree as stated in *KBG* that "Chapter 41 is broad in scope, and with certain limited exceptions that are inapplicable here, its

39

provisions 'prevail over all other law to the extent of any conflict.'" In other words, "[w]hile the Texas Property Code would allow the recovery of these 'civil damages' without any proof of actual damages, Chapter 41 does not, and Chapter 41 prevails" when there is a conflict. *Id.*[3]

Additionally, in the context of interpreting a different civil penalty provision in a different statute, the Texas Supreme Court has held that "civil penalties are exemplary damages for purposes of Section 41.004(a)." *Wal-Mart Stores, Inc. v. Forte*, 497 S.W.3d 460, 467 (Tex. 2016) (discussing civil penalties under the Texas Optometry Act).

---

[3]We note that in *Salamah v. Spring Trails Cmty. Assoc., Inc.*, No. 09-18-00051-CV, 2018 WL 6424835, at *4 (Tex. App.—Beaumont Dec. 6, 2018, pet. denied) (mem. op.), this Court in footnote 16 set forth:

> For example, the Salamahs suggest that the Association failed to prove that it suffered any damages, one of the elements of its claims. Under the Texas Property Code, however, a trial court may assess "civil damages for the violation of a restrictive covenant in an amount not to exceed $200 for each day of the violation." Thus, the Association's right to recover civil damages does not depend on the Association proving that actual damages resulted from the type of violation at issue in the suit.

*Id.* (citing Tex. Prop. Code Ann. § 202.004(c); *Uptegraph v. Sandalwood Civic Club*, 312 S.W.3d 918, 937–38 (Tex. App.—Houston [1st Dist.] 2010, no pet.)). We find *Salamah* is distinguishable on its facts and does not control our ruling on the question now before us in this case. In *Salamah*, the case was still in a pretrial posture and the only question was whether Salamah had shown a prima facie case under the TCPA, and the application of Chapter 41 was not before this Court. More importantly and even more distinguishable, in *Uptegraph* and *Salamah* there was no issue before the courts where the parties argued that Chapter 41 of the Texas Civil Practice and Remedies Code precluded recovery of these statutory damages in the absence of actual damages.

Here, the trial court's Final Judgment included the following:

> 7.     It is ORDERED, ADJUDGED AND DECREED that Plaintiff Rayburn Country Association is awarded civil penalties from Defendant Ryan Hightower, pursuant to Texas Property Code 202.004(c), in the amount of $25.00 per day beginning on the 91st day after the judgment, and contingent on Defendant having failed to comply with the above granted Injunctions.

The language the trial court used in paragraph seven states the court is awarding "civil penalties … pursuant to Texas Property Code 202.004(c)" and we conclude that because the trial court did not award any actual or compensatory damages to Rayburn Country the trial court's civil penalty award of $25 a day pursuant to the cited property code section conflicts with and violates Chapter 41. *See Wal-Mart Stores, Inc.*, 497 S.W.3d at 467; *KBG*, 478 S.W.3d at 122–23.

Therefore, having determined that Rayburn Country was not awarded actual damages, and that something more than nominal damages must be awarded to award exemplary damages, we conclude the trial court abused its discretion in awarding Rayburn Country civil penalty damages pursuant to Texas Property Code section 202.004(c). *See* Tex. Prop. Code Ann. § 202.004(c); *Wal-Mart Stores, Inc.*, 497 S.W.3d at 467; *KBG,* 478 S.W.3d at 122–23.

**Request for Limited Remand**

Last, Hightower requests this case be remanded to consider his attorney's fees should this Court reverse and render on his challenges to the trial court's award of

41

declaratory relief and failure to grant the plea to the jurisdiction. Having overruled each of Hightower's challenges to the declaratory judgment and the plea to the jurisdiction, we need not remand his request for attorney's fees to the trial court. We overrule Hightower's request for limited remand.

## CONCLUSION

We overrule issues one and three which included Hightower's challenges to the declaratory judgment and the permanent injunctions. We sustain issue two in part because the trial court abused its discretion in determining that Hightower breached a contract with Rayburn Country since Rayburn Country failed to establish damages, and the trial court also erred in awarding civil penalty damages under Property Code section 202.004. So we reverse and render judgment that Rayburn Country is entitled to no relief on their breach of contract claim, and that Rayburn Country is not entitled to any award of civil penalty damages under Texas Property Code 202.004. In all other respects, the judgment is affirmed.

AFFIRMED IN PART; REVERSED AND RENDERED IN PART.

W. SCOTT GOLEMON
Chief Justice

Submitted on July 11, 2025
Opinion Delivered November 26, 2025

Before Golemon, C.J., Johnson and Chambers, JJ.

42

CONCURRING OPINION

I respectfully concur in the result reached by the Majority because I cannot join and do not agree with the reasoning adopted by the Majority in its discussion about paragraph seven of the trial court's Final Judgment.

As to paragraph seven in the Final Judgment, Hightower challenges the trial court's award of $25 a day arguing it is an award of civil penalties and an exemplary damage that is barred by Chapter 41 of the Texas Civil Practice and Remedies Code which provides that "exemplary damages may be awarded only if damages other than nominal damages are awarded." *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.004(a). Hightower argues that because the trial court did not award any damages to Rayburn Country the award in paragraph seven of the Judgment violates Chapter 41.

It is true that in the trial court below, Rayburn Country sought actual damages under Property Code section 202.004(c) for $200 a day for 1400 days of past noncompliance with the requirements set by the ACC and allowed by the permit, but the trial court refused to award any damages to Rayburn Country. The trial court did not award any actual damages or statutory damages for past noncompliance. Instead, the trial court awarded only declaratory and injunctive relief to Rayburn Country.

Appellant contends and the Majority agrees that the reasoning in *KBG Invs., LLC v. Greenspoint Prop. Owners' Ass'n, Inc.*, 478 S.W.3d 111, 122-23 (Tex.

1

App.—Houston [14th Dist.] 2015, no pet.), controls this case. The Majority finds that the trial court's language in paragraph seven of the Final Judgment awarding $25 a day violates the punitive damage provision in Chapter 41. I respectfully disagree for two principal reasons.

First, I find *KBG* is inconsistent with what our Court stated in *Salamah v. Spring Trails Cmty. Ass'n, Inc.*, No. 09-18-00051-CV, 2018 WL 6424835, at *4, n.16 (Tex. App.—Beaumont Dec. 6, 2018, pet. denied) (mem. op.). We stated in *Salamah:*

> For example, the Salamahs suggest that the Association failed to prove that it suffered any damages, one of the elements of its claims. Under the Texas Property Code, however, a trial court may assess "civil damages for the violation of a restrictive covenant in an amount not to exceed $200 for each day of the violation." *See* [Tex. Prop. Code Ann.] § 202.004(c) []. Thus, the Association's right to recover civil damages does not depend on the Association proving that actual damages resulted from the type of violation at issue in the suit. *See Uptegraph v. Sandalwood Civic Club*, 312 S.W.3d 918, 937-38 (Tex. App.— Houston [1st Dist.] 2010, no pet.).

*Id.* I further find the Majority's attempt to distinguish *Salamah* to be unpersuasive.

Second, and more importantly, I disagree that Chapter 41 applies. Even assuming the Majority adopts *KBG* (a 2015 sister court's opinion) and overrules or ignores what we stated in *Salamah* (a 2018 opinion from this Court), Chapter 41 does not apply.

The trial court's Final Judgment included the following:

2

7. It is ORDERED, ADJUDGED AND DECREED that Plaintiff Rayburn Country Association is awarded civil penalties from Defendant Ryan Hightower, pursuant to Texas Property Code 202.004(c), in the amount of $25.00 per day beginning on the 91st day after the judgment, and contingent on Defendant having failed to comply with the above granted Injunctions.

The language the trial court used in paragraph seven states the court is awarding "civil penalties . . . pursuant to Texas Property Code 202.004(c)" but that language is expressly tied to the remainder of the sentence wherein the trial court clearly states the trial court's award of $25 a day is contingent on Hightower "fail[ing] to comply with the above granted Injunctions." The Injunctions ordered Hightower to take certain action within ninety days from the date of the judgment—remove the driveway to Wingate, install rock siding on the garage, and plant shrubbery in front of the garage facing Wingate. So, unlike the facts in *KBG*, this section of the trial court's judgment is a prospective award that *may* be awarded in a post judgment proceeding only, if after ninety days, Hightower fails to comply with the trial court's injunctions, and therefore it is not controlled by or in conflict with Chapter 41.

This is so because a trial court has broad authority to enforce its own judgment. *See Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co., L.P.*, 540 S.W.3d 577, 581 (Tex. 2018) ("[E]very court with jurisdiction to render a judgment also has the inherent authority to enforce its judgments."); *Rose v. Bonvino*, No. 05-14-00702-CV, 2015 WL 4736837, at *3 (Tex. App.—Dallas Aug. 11, 2015, pet. denied) (mem. op.); Tex. Gov't Code Ann. § 21.001(a) ("A court

3

has all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders . . . ."). The power to enforce judgments is inherent in every court with the authority to render them, and functions to ensure that judicial proceedings will achieve the purpose outlined in the judgment. *See Rose*, 2015 WL 4736837, at *3 (citing *Arndt v. Farris*, 633 S.W.2d 497, 499 (Tex. 1982)). And a trial court "generally retains jurisdiction to review, open, vacate[,] or modify a permanent injunction upon a showing of changed conditions." *City of San Antonio v. Singleton*, 858 S.W.2d 411, 412 (Tex. 1993); *see also Hereweareagain, Inc. v. City of Houston*, 383 S.W.3d 703, 708 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding) (discussing scope of inherent power of trial court to enforce its judgment, contempt proceedings, and due process requirements granting mandamus relief on a sanctions award).

The language in question is at most a prospective contingent award tied solely to future violations of the permanent injunctions that were granted in the Final Judgment. It does not award an amount of damages, nor is it an award of exemplary damages. Rayburn Country could not execute on that part of the Final Judgment because it is dependent upon post judgment violations of the permanent injunctions by Hightower. Rayburn Country will still have to return to the trial court for further relief if Hightower fails to comply with the permanent injunctions outlined in the Final Judgment. *See Daughtery v. Highland Capital Mgmt., L.P.*, No. 05-17-01115-

4

CV, 2019 WL 2223593, at *3 (Tex. App.—Dallas May 23, 2019, no pet.) (mem. op.) (explaining that enforcement of a permanent injunction generally involves a motion or pleading in which a party seeks relief from the trial court asking the trial court "to compel compliance with the order or punish noncompliance[,] typically using the threat of the court's power to impose sanctions or hold a party in contempt[]").

That said, I agree that the trial court abused its discretion by including paragraph seven in the Final Judgment because it prematurely sets a future sanction for potential future violations of the Injunctions, no post judgment motions or pleadings to enforce the permanent injunctions have been filed or heard, and the trial court had no evidence before it at that time it entered the Final Judgment to support an award as outlined in paragraph seven.

LEANNE JOHNSON
Justice

Concurrence Delivered November 26, 2025